Scofield, J.,
delivered the opinion of the court:
The claimant was appointed a midshipman in the Navy September 30,1867. After completing his academic course he was promoted to ensign, July 14, 1872; December 6, 1876, he was promoted to master; and January 10,1884, be became a lieutenant, in which grade he still remains.
He sues to recover longevity pay, which he claims should be calculated according to the Act March. 3,1883 (22 Stat. L., 473). The act is as follows:
“And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular Navy, in the lowest grade having graduated pay held by such officer since last entering the' service: Provided, That nothing in this clause shall be so construed as to authorize any change in the dates of commission, or in the relative rank of such officers: Provided further, That nothin g herein contained shall be so construed as to give any additional pay to any such officer during the time of his service in the volunteer Army or Navy.”
The only question involved in this case is, whether the claimant, while pursuing his studies at the Naval Academy, was, within the meaning of this act, serving as an officer or enlisted man in the Navy.
Section 1 of the Act July 16, 1862 (12 Stat. L., 583), divides the line officers of the Navy into nine grades. Eear-admirals are assigned to the first grade and midshipmen to the last.
Then section 11 of the same act provides—
“That the students at the Naval- Academy shall be styled midshipmen.”
The one section creates the grade of midshipman and thp ■other fills it with the students at the Academy. If these pro *184 visions have not been changed by subsequent legislation, we-see no way to avoid the conclusion that the students are officers in the line of the Navy.
Section 12 of the Act July 15,1870 (16 Stat. L., 321), now section 1512, of the Revised Statutes, provides—
“ That students at the Naval Academy shall hereafter be' styled cadet-midshipmen.”
We can not join in the conclusion arrived at by the defendants that by this simple change of title the students are placed entirely outside the Navy. The act itself does not so declare. It-divides the grade of midshipman on a marked and convenient line and styles all below that line as cadet-midshipman, but relative to their new status it is entirely silent. This might with much reason be regarded, nothing to the contrary appearing, as the creation of a new grade in the line of the Navy for cadet-midshipman. A failure, however, to enumerate it as such in the list of grades given in this act, and also in the subsequent list of the Revised Statutes, precludes that construction.. It leaves them, however, with the same duties, the same pay, the same mode of appointment, and subject to the same naval discipline and control as before. If the act, in correspondingly apt language, had provided that all captains below a certain rank m that grade should thereafter be styled lieutenant-captains, but had failed to enumerate lieutenant-captains in the-list of grades, it could not reasonably be inferred that the lieutenant-captains were thereby legislated out of the Navy; yet the cases are very similar, if not altogether alike.
Whatever doubt may arise as to the particular status of the students under the new title, it is quite certain, in the opinion of the court, they still constitute, in some capacity, a part of the Navy.
Subsequent legislation very clearly recognizes them as belonging to the Navy.
Section 1556 of the Revised Statutes, in prescribing the pay of all parties in the Navy, places them in the line of enumeration next below midshipmen and next above mates.
Again, by the Act June 23,1874 (18 Stat. L., 203), they are subjected for certain offenses to trial by court-martial. If they constitute no part of the Navy, they are entitled under the Constitution to trial by jury.
*185 Iii Perkins’s Case (20 C. Cls. R., 438) we held that cadet-engineers appointed by the Secretary of the Navy under section 1523, Revised Statutes were officers in the naval service. The court then said—
That a cadet-engineer like the claimant was a graduate and in the naval service, we have already decided; that he was an officer is made manifest by the terms of the Constitution, which provides that “Congress may by law vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law, or in the heads of Departments.” Congress has by express enactment vested the appointment of cadet-engineers in the Secretary of the Navy, and when thus appointed they become officers and not employés. (United States v. Germaine, U. S. R., 508; Moore v. United States, 95 U. S. R., 760; United States v. Hartwell, 6 Wall 385.)
The case was appealed. The Supreme Court, after reciting the above passage from the opinion of this court, said:
“ We adopt these views, and affirm the judgment of the Court of Claims.” (116 U. S. R., 484.)
This decision applies with equal force to the case of the claimant. He was appointed by the President under the Act July-16, 1862 (12 Stat. L., 583), and thus became an officer in the naval service.'
It is further contended that, even admitting the claimant was an officer or enlisted man in the Navy during his term at the Academy, it does not follow that he served as such. He was at the Academy, so they argue, only for education. That is true, but the education was at the request and for the benefit of the Government rather than for himself. A raw recruit is not sent to the front until he has had a course of instruction, discipline, and drill in the camp. That the time thus spent would constitute service in the Army no.one would doubt. Education at the Academy, though of a higher order, is required and justified by the same principle.
The law recognizes this education as service, by paying for it at the rate of $500 a year.
We are therefore of opinion that, in calculating the claimant’s longevity pay, he should be credited, in the grade of ensign, with the time from September 30,1867, to July 14, 1872.
*186 This calculation entitles him to claim $836.71, in addition to the pay already received.
Judgment will be entered accordingly.