Howry, J.,
delivered the opinion of the court:
The petition in this cause jiresents a claim under a provision of the Act of March 3,1883, Chap. 97 (22 Stat. L., 473), which reads as follows:
“And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the Regular or Volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the Regular Navy m the lowest grade having graduated pay held by such officer since last entering the service: Provided, That nothing in this clause shall be so construed as to authorize any change in the dates of commission or in the relative rank of such officers: Provided further, That nothing herein contained shall be so construed as to give any additional pay to any such officer during the time of his service in the Volunteer Army or Navy.”
There is no dispute as to the facts. The claimant’s intestate was appointed a mate in the Volunteer Navy of the United States January 7,18C2. He was promoted to the grade of acting ensign April 23, 1863, and Avas honorably discharged from the service October 23, 1866. On August 11, 1863, he was *196 appointed a boatswain in tbe Regular Navy, a,pd served until May 3, 1880, tbe date of bis death. The place of boatswain was tbe lowest grade in the service having graduated pay. If credited for tbe service in the Volunteer Navy according to tbe grade of boatswain in the Regular Navy under tbe provisions of tbe act we are called upon to construe, tbe estate of the deceased boatswain would now be entitled to $ 1,705.18 over and above tbe sums paid to him for bis services during bis lifetime.'
The claimant is tbe widow of Charles E. Rich, tbe deceased boatswain, and administratrix of bis estate, and presents her ■case upon the theory largely that tbe words “all officers of the Navy” mentioned in tbe statute, in literal interpretation, include such officers as were dead at tbe time of tbe enactment of tbe law, as well as those living, provided that, as such officers, they otherwise come within tbe provisions and tbe spirit of the law. This position of tbe claimant is fortified by references to certain provisions of tbe Revised Statutes where, it is claimed, deceased as well as living officers of the Army and “Navy and Marine Corps are designated as officers, from which it would follow that tbe provisions in the act of 1883 may apply to officers of tbe Navy living or dead. (Secs. 2418,2419, 2420, 2422, 2424, 2425, 2426, 2428, 2443; also secs. 4728, 4729, 4730,4732,4736, 4743.)
The act of 1883 has been held not to prohibit longevity pay founded on volunteer service and tbe entire clause within certain limits declared retroactive in its operation. That is, tbe clause must have tbe same effect in bestowing benefits upon living officers as if it bad been in operation before tbe claimant’s decedent entered tbe Regular Navy. (Hawkins v. United States, 19 C. Cls. R., 611.)
But is the provision of the statute quoted to be held applicable to the legal representatives of a deceased officer?
Until the beginning of this suit tbe interpretation put upon tbe provision in question with respect to deceased officers has been tbe same in tbe Navy Department, by tbe accounting officers of the Treasury, and the representatives very generally of deceased officers themselves. Tbe claimant herself accepted the departmental construction of tbe matter for the period of time fixed by law for bringing suit short of one day only. Her claim is not to be rejected, of course, for that. It is entitled to tbe same consideration on its merits as if brought the next *197 day after tbe passage of tbe act, but tbe delay and circumstances are at least significant of tbe prevailing estimate as to wbat Congress intended by tbe provision under wbicb tbe recovery is now sought.
Tbe clause in tbe act of 1883 is identical in terms with tbe provision of tbe act of 1882 (22 Stat. L., chap. 391, p. 287), except that tbe provision in the statute of 1883 provides that officers of tbe Navy shall be credited with tbe actual time they may have served as officers or enlisted men in the lowest grade having graduated pay held by such officers since last entering tlie service. The provision in each act relating to these officers appears in a naval appropriation bill. Congress was legislating for tbe naval establishment and providing tbe means to maintain its present condition at the time as well as 1o strengthen it for tbe future. The provision in dispute relating to officers was in conjunction with appropriations for tbe payment of tbe active list, tbe retired list, petty seamen, and alongside of appropriations for tbe Bureau of Navigation, Ordnance, Yards and Docks, Equipment and Recruiting, Construction and Repairs, and all those things incident to the maintenance of the Navy. Tbe language of tbe provision referring to officers followed tbe appropriation for tbe Naval Academy and conferred certain benefits to “ all officers of tbe Navy ” as set forth in tbe act. There is nothing, either in tbe circumstances surrounding tbe passage of tbe'act or tbe conditions existing at tbe time or in tbe language used in tbe law itself, to indicate that Congress meant to make tbe statute applicable to any but officers of the Navy living at the time.
If tbe intention existed to provide for those who bad been but were no longer officers, tbe phraseology used would doubtless have been such as to clearly express such intention.
It is said tbe word “ all, ” even iu literal interpretation, includes such officers as were dead as well as those living, provided as such officers they come within tbe provisions and tbe spirit of tbe act; that nothing is more common than references to u officers of tbe Revolutionary war,” “ officers of tbe Mexican war,” “ officers of tbe late war of the rebellion,” when a large majority of those referred to must, in tbe nature of human events, be dead. This is true. But in such references tbe words employed are iu a historical sense and so framed as to leave no room to doubt where benefits are to go. Nor would tbe use of tbe word “ tbe ” any more leave room for doubt than *198 the word actually used in this act. A mere play upon words can not be sufficient for the court to change the apparent intention of Congress in applying the statute.
At common law legislative enactments were regarded as operative prospectively unless the language was so express in terms as to make the statute appear retroactive on the face of the law, or so expressed as to be construed retrospectively by necessary implication. We know of no modification of this general rule in modern jurisprudence, and certainly where an enactment in the form of an appropriation bill provides for benefits to all officers of the Navy we can not hold that even in a literal interpretation such an enactment includes those who at some time had been naval officers but were no longer so by the act of God.
The authorities hold that retrospective laws are generally unjust and in many cases oppressive, and are therefore not looked upon with favor. General words in remedial statutes may be applied to past transactions and pending cases, according to all indications of legislative intent, and this may be greatly influenced by considerations of convenience, reasonableness, and justice. (Sutherland on Statutory Construction, 631.)
If living persons alone were involved, there would be greater force in the injustice of discrimination, and ambiguous expressions might well be resolved in favor of the claimant. Not so with respect to the services of sometime officers deceased at the time of the remedial legislation, unless the ambiguous words necessarily imply the inclusion of their past services for the benefit of others not officers.
The accident of death is a reasonable cause for the distinction made by the statute, although no reason can be assigned why Congress did not legislate for all while they were living. If it did not do so for the use of their heirs after their death, the court can not add anything on equitable grounds.
The provision of law under consideration is a remedial statute, and the indication of legislative intent that it should operate retroactively is manifest in the manner set forth by the • opinion in the case of Hawkins v. United States (supra), but we can not declare that there are any indications of legislative intent to apply the benefits of the statute to those gone before and no longer connected with the naval establishment in some manner as officers. But rather, from the course of general *199 législation providing benefits for services rendered by all men or officers in particular wars, do we find an intendment to the contrary in this act. In the law granting bounty lands for soldiers in the war with Great Britain to the surviving officers and soldiers of that war there is an express provision for the widow and minor children of deceased officers and soldiers. (Act of Feb. 11, 1847 j act of Sept. 28, 1850, sec. 2418, R. S.) In the same acts, where certain classes of persons in the Mexican war are provided for, suitable provision was made for benefits to accrue in the event of the death of such classes of persons. (Sec. 2419, R. S.) Where the militia or volunteers were called into service the officers and soldiers thereof were in terms declared entitled to the benefits of a preceding section. (Sec. 2420, R. S.) On its face the last section refers to all officers and soldiers called into service. And again, the period during which any such officer or soldier so called into service remained in captivity shall be estimated and added to the period of actual service. (Sec. 2422, R. S.)
In the event of the death of any person for whom provision was made by sections 2418 and 2420 and who did not receive bounty land for his service, it was provided a like warrant should issue in favor of the widow upon terms. (Sec. 2424, R. S.) Surviving persons serving for a period of not less than fourteen days were taken care of by another section. (Sec. 2425, R. S.) Beneficiaries were designated by another provision which necessarily included all who had served. (Sec. 2420, R. S.) Widows and minor children of persons who, if living, would have been entitled to a warrant were recognized in a certain manner. (Sec. 2428, R. S.) To make certain the applicability of legislation to cases where death intervened before an officer or soldier of the Revolutionary war or a soldier of the war of 1812 had obtained a patent for land the resolution of March 3, 1843 (sec. 2443, R. S.), made it the duty of the Secretary of the Interior to issue a patent to the land to the heirs of such deceased officers or soldiers without specifying each.
It is insisted by learned counsel that in those statutes relating to pensioners in various wars (secs. 4728, 4729, 4730, 4732, 4736, and 4743) the designation of “officers” to a deceased officer is maintained. But those statutes refer to disabilities and death, and expressly provide for those contingencies, as in the act of March 2,1889, for the relief of certain volunteer *200 and regular soldiers' of tbe late war and the war with Mexico. (25 Stat. L., 869; 1 Supp. Rev. Stat., pp. 692, 694.) There are references to any soldier wbo served in those wars, and to make clear the intent that death should not defeat the will of Congress, the statute provided for the widow and heirs to succeed to the rights of any soldier serving in the manner pointed out by the law in its other parts.
It is again urged by the claimant that, inasmuch as the act of 1883 specifically refers to some other and antecedent date, it becomes necessary in every case to fix upon some prior date as a starting point. This would be true as to retired officers and those suspended from duty, or in arrest, or even in the extreme case stated of an officer who happened to be in the penitentiary, as well as those actually serving. Those retired and suspended are officers of the Navy still and yet a part of the naval establishment, without duties to perform of an active character and without functions as active officials. Nevertheless, while living and carried on the rolls as officers of the Navy at the time of the enactment they were within the statute and entitled to its benefits. Not so with respect to deceased officers, because it must be conceded that Congress had the right to apply the benefits of the statute to the living without including the families of deceased officers; and it must be presumed they did so.
The plea for liberality of construction for the act of 1883 is said to be shown in the decision of this court in Baleens Case (23 C. Cls. R., 181; affirmed in 125 U. S. R., 646), where the service of Baker as a “student” at the Naval Academy was recognized as service in the Navy. It is true the Naval Academy came into existence as a convenient place of instruction without legislative authority, but it was conclusively shown that the students at the Naval Academy were recognized by legislation as forming a part of the Navy. Here the legislation omits any reference to those who had been officers; the statute deals with those in commission at the time of the passage of the act, or on the naval list. The language is in the present tense, not the past tense.
The theory of the defense that the benefits arising under the act of 1883 constitute a free gift or bounty to officers in the Navy at the time of its passage who had served in the Army or Navy during the late war and had not been credited with that service in their pay accounts is denied by the claimant, *201 wlio contends that the statute means increased pay for sendee actually rendered by officers at any time in commission. For tliese respective contentions as to whether the law was a mere gratuity or increased pay both sides seem to rely upon the authority of Semple’s Case. (24 C. Cls. R., 422.) The claimant in that case, as the widow of a purser in the Navy who had not received in his lifetime the three month’s extra pay given by the Act of July 19, 1848 (9 Stat. L., 248, sec. 5), was declared entitled to receive the pay as a gratuity. The court said that the extra pay was something in the nature of a gift inter vivos and in no manner a legal obligation, and Congress had the power at anytime before payment to revoke its terms; that in fact and law the pay was a gratuity given for faithful service. The question finally decided there, however, does not further apply, inasmuch as the line of descent was indicated by the statute under which the purser’s widow prosecuted and maintained her claim.
We do not think it material in the view we have taken of the case here to decide whether the benefits given by the act of 1883 were synonymous with bounty, or meant increased pay in special recognition of actual service. Whether a gift or bounty or increased pay, the claimant’s intestate at the time of the passage of the act had passed beyond the possibility of making claim for whatever the statute gave. She can not now maintain suit for an estate'which had no existence in his lifetime as to him. His accounts for service were to be settled under the laws as they were operative at the time of his death. The benefits of the act conferred after the death of the officer did not form legal assets of his estate inter manes, where the commodity or profit arises to the executor in right of the testator, or assets which the executor could take virtute officii, nor yet such pay, bounty, or privilege which widows, surviving children, or other representatives of deceased officers could demand. The service rendered by an officer in his lifetime, but deceased at the date of the passage of the act, would put the statute in force retroactively for the benefit of his representatives if there was anything to manifest the service of such deceased officer as one of the purposes of the law, but otherwise not.
If the statute be viewed as one recognizing rights, then it was the inherent rights of living naval officers which were considered, not the rights of .those officers who had passed *202 beyond consideration. If viewed as a statute bestowing gratuities, tbe dead could not take, and it must be presumed Congress did not intend to give.
Tbe argument based on tbe decision of the Supreme Court in tbe case of Kendall v. United States (12 Pet., 524) can have no application in a matter like that at bar, where tbe accounts are supposed to be closed. In the case cited tbe Postmaster-General was required to credit tbe relators with tbe full amount of an award. Upon its face tbe law authorizing tbe award showed tbe existence of accounts between tbe relators and tbe Post-Office Department. Ho money was required to be paid and none could have been drawn out of tbe Treasury without further legislative provision if tbe credit required to be given should overbalance tbe debit standing against tbe relators. Tbe award made pursuant to tbe act of Congress, and for which credit was to be given, was directly in favor of tbe relators by name and no doubt could arise as to who was to be credited. Such is not tbe case here. The controversy turns upon what officers were meant and whose accounts were to be credited.
Tbe argument that tbe act of 1883 was dealing with accounts of naval officers entitled to graduated pay under tbe act of 1870, and that tbe act under which the suit is brought is but an amendment to tbe act of 1870, and in this view must necessarily include credit for accounts of deceased officers, is not without force. But if it be true former officers of tbe Navy who bad resigned their commissions before tbe passage of tbe act of 1883 and who were otherwise within its terms would also be entitled to credit upon their accounts along with tbe former accounts of deceased officers. With no sure guide pointing to such conclusion, and being unable to accept the decision in United States v. Green (138 U. S. R., 138), cited as controlling here, we are constrained, upon a careful consideration of tbe whole matter, to bold that the claim for relief can not be maintained.
Tbe opinion of tbe court is that tbe petition be dismissed.