Nott, Ch. J.,
delivered the opinion of the court:
At the outbreak of the Spanish war, it appears to the court, the military forces of the United States consisted of three classes: The first was the Regular Army; the second was the volunteer regiments; the third was the State militia regiments which were received into the service as they then existed. As to the second class, the Act 22d April, 1898 (30 Stat. L., p. 362, sec. 6), enacted, specially, that each regiment of the Volunteer Army shall have one surgeon and two assistant surgeons. This was contained in the first proviso to the sixth section. The second proviso enacted that when the members of any regiment of the organized militia of any State shall enlist in the Volunteer Army in a body as a regiment the regimental officers “ in service with the militia organizations thus enlisting may be appointed bjr the governors of the States and Territories, and shall when so appointed be officers of corresponding grades in the same organization when it shall have been received into the service of the United States as a part of the Volunteer Army.”
There was a manifest advantage to the Government in securing the service of militia regiments as they were then already organized. It prevented delay in the enlistment of men; it diminished uncertainty as to the character and capacity of the officers; it brought together from the begin *113 ning of the service officers who knew their men, and men who knew their officers. A consideration for this advantage, apparently intended by the statute, was that the officers should continue to have the same rank after entering the service of the United States which they held while in the State service. "Where an officer was a captain, he was to continue to be a captain; where an officer was a major, he was to continue to be a major. In other words, the United States agreed to take a regiment just as it stood.
This was the opinion of Attorney-General Boyd (22 Op. Attorneys-General, 536). The case before him, indeed, required that he should go further than the limits of the case now before the court. The organizations known as “ volunteer regiments” were restricted to two majors; but a regiment of militia so taken into the service from the State of Minnesota had three majors under its State organization. The Attornej^-General held that a militia regiment was exempt from the operation jdí the first clause of section 6, and that when the Government took the regiment it took with it three majors. The Attorney-General went further than this, and held that if a vacancy should occur by death or resignation, the governor of the State had the right to fill the vacancy, so that the regiment should contain the number of officers with the grade which the law of the State provided for them.
If the intent of Congress was that the law should have the meaning ascribed to it by the defendants, the second proviso should have said that when the members of any regiment of organized militia in any State shall enlist in the Volunteer Army in a body as such regiment, they shall nevertheless be subject to the restrictions as to the number or rank of officers of the regiments of the volunteer forces. Instead of saying so, it said that these officers of militia regiments shall “ be officers of corresponding grades in the same organization when it shall have been received into the service of the United States.” To hold otherwise would be to deprive this language of all meaning. It undoubtedly was intended to mean something in the legislative mind, and that something *114 was that it should constitute an inducement to militia regiments to enlist in the service of the United States without reorganization.
The terms “ grade ” and “ rank ” have been carefully considered by this court and clearly defined:
“ Grade is a step or degree in either office or rank, and has reference to the divisions of the one or the other or both, according to the connection in which the word is employed.” (Per Richardson, J., Wood v. United States, 15 C. Cls. R., 151, 160.)
“ Every lieutenant has the grade of his class and also a grade in his class, by which his pay is ascertained.” (Per Scofield, J., McClure v. United States, 18 C. Cls. R., 347, 348.)
“ Navy officers are classified (1) according to duty, office, or title; (2) according to relative importance or title;. (3) according to compensation. All of these classes come within the normal meaning of the words ‘ grade or rank.’ ” (Per Scofield, J., Rutherford v. United States, ib., p. 339.)
The claimant in the present case was an assistant surgeon in the First Indiana National Guard, with the rank, as provided by the law of that State, of captain. The act of Congress, before cited, assured him that if he would go with his regiment into the service o'f the United States he should continue to hold in their service a corresponding grade; and grade included rank. To tell an officer that he shall continue to hold in their service a corresponding grade; and in some latent way that he shall not continue to have the usual legal consequences of grade and rank, one of which is pay, would be to ascribe to Congress an unworthy purpose. It is the opinion of the court, therefore, that he is entitled to the pay of a captain of cavalry, such as would be paid to a surgeon in the service of the United States having the rank of captain.
The judgment of the court is that the claimant recover the difference between the pay he received as first lieutenant mounted and that of captain mounted, also the sum of $33.33 for seven days’ extra pay as captain mounted, amounting to $263.33.