Booth, J.,
delivered the opinion of the court:
The findings of fact in this case disclose that the claimant, John W. Nutt, was appointed and commissioned regimental adjutant with the rank of captain in the Fourteenth Regiment of Infantry, National Guard-of the State of New York. On May 2,1898, the claimant, with his regiment, was enrolled for service in the volunteer army of the United States, and on May 15 and 16 the regiment as a body was mustered into the Volunteer Army of the United States for service in the Spanish war under the act of April 22, 1898.
In appears that on May 12, 1898, just prior to the time of the muster into the service of the United States of claimant’s regiment, the governor of the State of New York erroneously commissioned claimant as adjutant with rank of first lieutenant of his regiment, whereas under the laws of the State of New York he should have been commissioned as regimental adjutant with the rank of captain. He had been, and was at the time of liis muster into the service of the United States regimental adjutant with the rank of captain in the State organization.
This erroneous commission, designating claimant as adjutant with the rank of first lieutenant, did not reach him until some time in July, 1898, up to which date he'had been continuously serving as regimental adjutant of his regiment and *372 receiving the pay of his rank, totally unaware of the mistake of the governor in stating the same.
On July 21, 1898, the colonel of his regiment, at a time when the proper rank of claimant was pending decision, in response to numerous protests made by claimant to the proper military authorities, displaced him as regimental adjutant and assigned him to command as first lieutenant of a company of his regiment. No charges were ¡^referred against the claimant, and the apparent reason for his removal was because of the mistaken commission theretofore issued him, wherein his rank was erroneously recited. The governor of New York, upon receipt of information calling his attention to the error committed in claimant’s first commission, issued a second commission, wherein his legal rank was stated, and dated the said commission as of the date of the first, to wit, May 12, 1898, thus conforming to the military laws of the State of New York.
The claimant accepted, under protest, the assignment to the command of first lieutenant; and, although reneatedlv ' '■ questing to be remustered as of his proper and legal rank, was denied that privilege by the proper military authorities. The action here instituted is to recover the difference in pay between the pay of a first lieutenant and that of regimental adjutant; also one month’s extra pay as of his legal rank in lieu of furlough granted his regiment under acts of January 12, 1899, and May 26, 1900, the two causes having been consolidated.
The sixth section of. the act of April 22, 1898 (30 Stat. L., 362), provides as follows:
“ That the Volunteer Army and the militia of the States when called into the service of the United States shall be organized under, and shall be subject to, the laws, orders, and regulations governing the Regular Army: Provided, That each regiment of the Volunteer Army shall have one surgeon, two assistant surgeons, and one chaplain, and that all the regimental and company officers shall be appointed by the governors of the States in which their respective organizations are raised: Provided further, That when the members of any company, troop, battery, battalion, or regiment of the organized militia of any State shall enlist in the Volunteer Army in a body, as such company, troop, battery, battalion, *373 or regiment, the regimental, company, troop, battery, and battalion officers in service with the militia organization thus enlisting may be appointed by the governors of the States and Territories, and shall, when so appointed, be officers of corresponding grades in the same organization when it shall have been received into the service of the United States as a part of the Volunteer Army: Provided further, That the President may authorize the Secretáry of War to organize companies, troops, battalions, or regiments, possessing special qualifications, from the nation at large not to exceed three thousand men, under such rules and regulations, including the appointment of the officers thereof, as may be prescribed by the Secretary of War.”
The foregoing statute has been many times interpreted and re.viewed by the law officers of the Government and at least once by this court. The court, in a very clear and forcible opinion in the case of Hawkins v. United States (40 C. Cls. R., 110), held, quoting from the syllabus:
“ The purpose of the act 22d April, 1898 (30 Stat. L., p. 362, § 6), providing that where a State militia regiment enlisted during the Spanish war in a body as a regiment the regimental officers shall have the same grade as when in the State service, was to secure the service of regiments already organized without the delay incident to the formation of new regiments. A consideration given for this was that the officers should continue to have the same rank.”
Again it is said, page 114:
“ * * * The act of Congress, before cited, assured him that if he would go with his regiment into the service of the United States' he should continue to hold in their service a corresponding grade; and grade included rank. To tell an officer that he shall continue to hold in their service a corresponding grade, and in some latent way that he shall not continue to have the usual legal consequences of grade and rank, one of which is pay, would be to ascribe to Congress an unworthy purpose”’
The Attorney-General, in an opinion rendered July 18, 1899 (22 Op. At. Gen., 536), held, quoting from the syllabus:
“ Organizations of State militia, received as a body into the service of the United States as a part of the Volunteer Army under the act of April 22, 1898, are to be maintained as received, and the officers of the same are entitled to enter the *374 service with tire grades which their commissions severally indicate.
# ‡ * * Hi
“A regiment so entering the military service of the United States has the'right to maintain its organization with the number and grade of officers authorized by the laws of the State from which it came.”
The Comptroller of the Treasury, in an opinion rendered August 7, 1900 (7 Compt. Dec., 56), held, quoting from the syllabus:
“A quartermaster-sergeant of a volunteer organization who was mustered out March 8, 1899, to accept appointment as second lieutenant, and who was commissioned and reported for duty as second lieutenant March 9, 1899, but who was not mustered in until March 23, 1899, is entitled to pay as second lieutenant from the date of .his acceptance of his commission by entering upon duty thereunder.”
On page 59 of the above opinion appears this language:
“ * * * To hold that he was not invested with his office of second lieutenant upon the acceptance of his commission and entering upon duty, but must await muster in at the pleasure of the United States,, would have the effect to deprive the governor of a State of the power to fill a vacancy in a regiment of the Volunteer Army from his State so long as the muster in was deferred. The better view is that in such case the muster in, like the oath of office, relates back to the date of acceptance of the commission issued by the governor of the State.”
In 5 Comptroller’s Decisions, page 29, in a case of the Seventh Ohio Infantry, the Comptroller held:
“ If a regiment of militia of a State has under the laws of the'State four adjutants and such regiment has enlisted'in a body and the four adjutants were duly appointed by the governor of the State and have been accepted in the Volunteer Army in accordance with said act of April 22,'- 1898, each adjutant is entitled to be paid as such, as ¡Drovided by law, and the same rule applies to the other extra officers above mentioned so appointed and received into the Volunteer Army in accordance with said act.
“ The officer borne on the rolls of the Seventh Ohio Infantry as captain and adjutant and the officer borne as captain and quartermaster should each be paid $1,800 a year, being the pay provided by law for an adjutant or quartermaster of a regiment, with increase for length of service.”'
*375 The same question was likewise involved in the opinion just quoted, wherein the pay of three majors, duly appointed and commissioned by the governor of Missouri, was contested upon the theory that under the rules and regulations for the Eegular Army of the United States only two majors to a regiment are authorized, but the Attorney-General held that each of these officers was entitled to pay as major.
From these authorities it is apparent that the purpose of the act of April 22, 1898, was to preserve intact the military organizations of the several States accepted into the Volunteer Army of the United States for special service and at the close of the same to return them to their States unimpaired save by the exigencies of war. This was the inducement offered to the militia of the States. The Government' desired trained soldiers, men acquainted with military tactics, officers of experience, and in the invitation extended to them by the act of April 22,-1898, they were guaranteed the occupancy and pay of the grade and rank they held in their several State organizations.
No authority is granted by the act of April 22,1898, to any officer of the Eegular Army to decide the rank of the officer of the State militia or in any way determine his military status as respects his pay. The' mustering officer of the Eeg-ular Army was charged with but one duty, and that was to muster into the service of the Government the State organizations as they were organized under the laivs of the State at the time of the muster in. The mere act of muster did not of i tself determine the status of the officer’; it was determined by the legal grade and rank he held in the State organization at the time of its muster into the service of the United States. If the mustering officer refused to do his duty, such refusal could not deprive the officer of his rights under the law. The act of April 22, 1898, fixed the officer’s military status in the Volunteer Army of the United States as respects his pay, and so long as he remained honorably in the service of the Government he was entitled to receive the same as so fixed.
It is contended, however, that immediately upon muster into the service of the United States the. State organizations became subject to the rules and regulations governing the *376 Regular Army of the United States, and that in pursuance thereof this officer was relieved from duty as regimental adjutant and assigned to duty as first lieutenant of a company of his regiment. .In respect to military discipline and for the general good of the Army this contention may be sound (as to it, however, we express no opinion), but as respects the officer’s pay, fixed by law as of the rank of the office he held in the State organization so long as he remains honorably in the service of the United States and the right of the governor of the State to fill any vacancy occurring in the State organizations while in the service of the United States, it is contrary to all constructions heretofore placed upon, the statute, as appears by the above authorities.
We have no hesitancy in holding that the action of the colonel of the regiment, in assigning another officer to the position of regimental adjutant after relieving the claimant from that office, was in contravention of law and invalid, and that it did not operate in any way to deprive this claimant of his statutory pay. We are warranted from the above authorities in concluding that the removal of the claimant from his position as regimental adjutant, in so far as it was predicated upon the erroneous commission issued by the governor of New York, no other cause appearing, was illegal and in no way deprived him of the pay provided by statute for that office. The commanding officer of the regiment had no authority under the law to^appoint a regimental adjutant and none to fill a vacancy in the office when one occurred.
It is also asserted that the rank of the claimant, as stated iu his first commission issued by the governor of New York just prior to his muster into the service of the United States, was, under the positive terms of the .act of April 22, 1898, conclusive as to his subsequent military status in the Volunteer Army. The authorities heretofore cited do not attach to the executive act of mustering into the service the same significance here contended for. The opinion of the Comptroller of the Treasury heretofore cited (7 Comp. Dec., 56) held that by refusing to muster into the service of the Volunteer Army of the United States an officer duly appointed and commissioned by the governor of a State the mustering *377 officer did not thereby deprive the officer of the pay of the rank to which, he was legally entitled, but that the officer was entitled to the pay of his rank from the date of his acceptance of his commission and entering upon the duties thereof, notwithstanding he was not mustered into the service with that rank until some time subsequent thereto. • In reference thereto the Comptroller said: “ The better view is that in such case the muster in, like the oath of office, relates back to the date of acceptance of the commission issued by the governor of the State.”
The act of April 22, 1898, guaranteed the claimant that when he entered into the service of the United States he should have the same grade he held in the State organization, not the grade mistakenly assigned him in the governor’s first commission. The statute was enacted to accomplish substantial benefits. The Congress employed no technical words to encompass the defeat of its own legislation. It used the words “ when so appointed be officers of corresponding grades in the same' organization.” The. words “ corresponding grades” are not ambiguous. To deny this claimant.relief would certainly entail upon the court the duty of attaching to these words some meaning other than their usually and generally accepted one. Finding n shows this first commission of the governor to have been a mistake of fact subsequently corrected by a second commission issued nunc ■pro tunc, reciting the correct legal rank of the claimant and which was the only commission accepted by him.
It is not contended by the defendants that power was lacking in the governor to issue to claimant the second commission wherein his legal rank was correctly stated. As observed in the preceding opinions, if by refusing to muster or remuster an officer of the State organization as of his legal rank he could be deprived of the pay attached to that rank, the guaranties of the act of April 22, 1898, would be wholly inefficient in law and certainly mere surplusage in the statute.. We think a fair construction of the authorities cited supports the conclusion that Congress by fixing the date of muster as the time for determination of the officer’s rank in the Volunteer Army of the United States, intended thereby to *378 preclude tbe governors of tbe several States from thereafter changing tbe legal rank so fixed, for otherwise tbe discipline and efficiency of the Army would be seriously impaired and conflict of authority result. '
To hold, however, that a substantial mistake in stating the rank of an officer of the State organization was irrevocably determined by the act of muster would place upon the statute such a narrow construction as to work great injustice, and would certainly be hostile to the intention of the Congress as expressed therein. It was the legal rank of the officer in the State organization that determined his future' status in the Army of the United States, and not his mistaken one. We are therefore of the opinion that the removal of claimant from the position of regimental adjutant was without authority of law as respects his pay. Section 1261 of the Revised Statutes provides for the pay of an adjutant at $1,800 a year. The question of one month’s extra pay follows the conclusions of the court as above set forth.
Judgment is awarded claimant, following the findings, for two hundred and fifty-eight dollars and thirty-three cents ($258.33).