•Peelle, Ch. J.,
delivered the opinion of the court:
September 29,1864, the claimant ivas appointed a midshipman at the Naval Academy, and served there continuously until after the close of the late civil war. On August 10, 1903, he was promoted to the grade of captain, and on September 29,1904, he was, at his own request — after forty years’ service — placed on the retired list by the President under the provisions of Revised Statutes, section 1443.
*89 Section 11 of the act of March 3, 1899 (30 Stat. L., 1001"), known as the “ Navy personnel act,” provides:
“ That any officer of the Navy, with a creditable record, who served during the civil war, shall, when retired, be retired with the rank and three-fourths the sea pay of the next higher grade.”
The claimant contends — and that is the whole case — that he was entitled to be “ retired with the rank and three-fourths the sea pay of the next higher grade;” that is to say, with the rank and three-fourths the sea pay of a “ rear-admiral embraced in the nine lower numbers of that grade,” as provided by section 7 of said personnel act.
To entitle the claimant to recover he must show, not only that he was an officer of the Navy with a creditable record, but that his service as a midshipman at the Naval Academy was service “ during the civil war,” within the meaning of the act.
The evident purpose of that statute was upon retirement to give to those officers of the Navy with creditable records, “ who served during the civil war,” credit by way of advancement to the rank and three-fourths the sea pay of the next higher grade.
If the claimant were seeking to recover the salary of an office to which he had not been appointed, clearly he could not recover, as the power of appointment to office in the Navy resides in the executive branch of the Government; and while the office carries with it the rank and salary pertaining to that grade, it does not follow that one may not be entitled to the rank without holding the office; that is to say, the name of the office is also a designation of rank, which latter may be changed by Congress without encroaching upon the executive branch of the Government. This was the ruling of the court in the case of Wood (15 C. Cls., 151-160), where the court, respecting the power of Congress to change the rank of an officer in the Army, said:
“ By Eevised Statutes, section 1094, officers on the retired list of the Army compose part of the Army of the United States, and therefore no one can be upon that list who is not. an officer appointed as required by the Constitution, article 2, section 2. But being such officer, thus appointed, of any grade on the active list, he may be retired with a rank higher *90 or lower than that which belongs to his office whenever Congress sees fit so to provide. Congress can not appoint him to a new and different office, because the Constitution vests the appointing power in the President with the advice of the Senate, or in certain cases in the President alone, the heads of the Executive Departments, or the courts of law; but Congress may transfer him to the retired list, and may change his rank and pay at any time, without coming in conflict with that provision of the Constitution.”
That case was, on appeal to the Supeme Court, affirmed (107 U. S., 414). The court, referring to the ruling of this court, said:
“ These views appear to us to be sound. General Wood, holding the office of a colonel of cavalry in the Army, his. retirement with the rank of major-general, under the act of 1868, did not'confer on him the office of major-general. He remained in the office of colonel of cavalry, and acquired a higher rank and higher pay as a retired officer. Such rank not being an office, Congress could change his rank, and with it his pay, as it did by the act of 1875. * * * The pay of retired officers is a matter entiely within the control of Congress, and so is their rank.” (Leopold v. United States, 18 C. Cls., 546; Hawkins v. United States, 40 C. Cls., 110; United States v. Redgrave, 116 U. S., 474, affirming the judgment of this court, 20 C. Cls., 226. See also 22 Op. Atty. Gen., 433.)
Those decisions are in harmony with Revised Statutes, section 1558, respecting the pay of officers of the Navy on the retired list. Therein it is in substance provided that upon retirement the pay of all such officers shall be seventy-five per centum of the sea pay, not of the office held by them, but of the “ grade or rank which they held, respectively, at the time of their retirement.” Officers thus retired remain subject to the rules and articles for the government of the Navy, as well as to trial by court-martial. (Revised Statutes, section 1457.)
If, therefore, the claimant was entitled to “ be retired with the rank and three-fourths the sea pay of the next higher grade,” the court may render judgment in his favor without encroaching on the executive branch of the Government.
Was the claimant’s service as a midshipman at the Naval Academy such service as entitled him to be retired with the rank and three-fourths the sea pay of the next higher grade ?
*91 The claimant was appointed to the Naval Academy September 29, 1864, and forty years thereafter was, on his own application, retired by the President under Eevised Statutes, section 1443, which provides:
“ When any officer of the Navy has been forty years in the service of the United States he may be retired from active service by the President upon his own application.”
The claimant while at the Naval Academy was; therefore, recognized by the executive department of the Government as an “ officer of the Nav}»- * * * in the service of the United States,” otherwise he would not have had forty years’ service to his credit when he retired.
By the act of July 16,1862 (12 Stat. L., 583), now Eevised Statutes, section 1362, dividing the active list of the line officers of the Navy into nine grades, midshipmen were designated ninth. That law xvas in force when the claimant was appointed at the Naval Academy and continued in force until after the civil war and until the act of July 15, 1870 (16 Stat. L., 321) ,-when the title of midshipman was changed to cadet-midshipman, but such change of title did not affect the character of the service at the academy, though that is not -material here.
In the case of Baker (23 C. Cls., 181) the question involved was -whether the claimant, while pursuing his studies at the Naval Academy, was an officer or an enlisted man in the Navy, and whether, if an officer, he was entitled to be credited with such pei’iod of study in the calculation of his longevity pay, and the court held that he was, and that case was, on appeal, affirmed (125 U. S., 646). The latter court, among other things, said:
“ The single question involved is whether the claimant, while he was a midshipman, was serving as an officer or enlisted man in the Navy, within the meaning of the act of 1883. The contention on the part of the United States is that the claimant, whilst a student at the Naval Academy, did not, in the sense of the act of 1883, serve either as an officer or an enlisted man; and that, in that view, it is immaterial whether as a student he is or is not to be regarded as an officer of the Navy. - It is denied by the United States that the entry of a pupil into the Academy is his entry into *92 the naval service, and that the period of his pupilage is actual service within the meaning of the act of 1883; and it is argued that he does not enter into actual service until he is appointed either in the line of the Navy, the Marine Corps, or the Engineer Corps; that as a student he does not serve, but is preparing to serve; that he does not render service to the Government, but is receiving favors from it; that he can only commence service after his graduation, such service depending upon his graduating merit; and that the.compensation of $500 a year given to him is not a payment for service rendered, but is a gratuity and an allowance made for him for his support in .his preparation for service to be rendered.
“ When the claimant was appointed a midshipman in the Navy, on the 30th of September, 1867, the act of July 16, 1862, c. 183 (12 Stat. L., 583), was in force. The first section of that act divides the active list of line officers of the Navy into nine grades, the first of which is £ rear-admirals,’ the eighth of which is ‘ ensigns,’ and the ninth of which is ‘ midshipmen.’ The eleventh section of that act provides that the students at the Naval Academy shall be styled midshipmen until their.final graduating examination, when, if successful, they shall be commissioned ensigns, ranking according tp herit. Thus section 1 of that act creates the grade of midshipman as one of the nine grades of the active list of line officers of the Navy, and section 11 declares that the students at the Naval Academy shall be styled midshipmen. * * *
“ It is impossible not to conclude that the claimant continued to be, after the passage of the act of 1870, as he was prior to its passage, an officer of the Navy, on the active list, and serving as such an officer, by virtue of his having been appointed a midshipman and continuing to be a student in the Naval Academy, even though he might have been properly styled, after the passage of the act of 1870, a cadet midshipman.”
We must therefore conclude that the claimant, while serving as an undergraduate in the Naval Academy as a midshipman, was an officer of the Navy in the service of the United States, and as such was, under the articles for the government of the Navy, subject to court-martial, and was also subject to the orders of his superior officer the same as other officers of the Navy.
In the recent case of Jasper (38 C. Cls., 202) the court in substance held that while a midshipman in the Naval Academy was an officer of the Navy while pursuing his studies *93 there, and as such officer was entitled to have such service reckoned in calculating his longevity pay, yet he was not an officer of the Navy “ who. served during the civil war ” within the intent of the navy personnel act, allowing him to retire with the rank and pay of the next higher grade. But on claimant’s motion therefor a new trial was allowed, on the theory that midshipmen at the Naval Academy were liable to be and were actually called into the service during the civil war. (Jasper case, 40 C. Cls., 76.)
Though the claimant was subject to be ordered to active duty on board ship or otherwise during his term in the Naval Academy, it does not appear that he was so ordered or that he performed any service other than that required of him as a student at the academy. That he was not so ordered into active service was, of course, not his fault.
Shall, then, the failure of his superior officers to order him into active service during tl\at period deprive him of the benefit of the act ? If so, then active service in the civil war becomes the test of an officer’s right to “ be retired with the rank and three-fourths the sea pay of the next higher grade.” But to so hold we must import into the section language that will harmonize with that construction. That is to say, we must construe the section as though the language were that any officer of the Navy with a creditable record who served actively during the civil war, or who had active service during the civil war, shall be entitled to the benefit of the act. To so hold would exclude from the benefit of the act all officers of the Navy who from no fault of their own saw no active service in or during the civil war.
Sxippose prior to the civil Avar an officer of the Navy had been assigned to duty at the American legation in London, and because of his efficiency there, or for other reasons, he had been kept there during the Avhole period of the civil Avar, Avould it be contended that he, a recognized officer of the Navy, with a creditable record, did not serA^e “ during the civil war ” because he had no active service therein ? We think not, and since the claimant was an officer of the Navy Avith a creditable record on “ the active list of the line officers of the NaVy ” during he civil war, by virtue of the act of 1862 (supra), we must hold that his service as a midshipman *94 at the Naval Academy from the date of his appointment thereto until the close of the rebellion was service “ during the civil war ” within the intent and meaning of section 11 of said navy personnel act, and he was therefore entitled to have been retired with the rank and three-fourths the sea pay of the next higher grade, i. e., with the rank and three-fourths the sea pay of a “ rear-admiral embraced in the nine lower numbers, of that grade,” being three-fourths the old navy sea pay of a rear-admiral as preserved by section 13 of the navy personnel act, as amended June 7, 1900 (31 Stat. L., 697), as decided by this court in Terry v. United States (39 C. Cls., 353), followed by the Comptroller in Barclay's and Foster's cases (11 Comptroller’s Decisions, 347-645).
The judgment will be suspended until the computation of the amount due, upon the basis of this opinion, has been ascertained by the accounting officers, after which judgment is ordered to be entered.
On February 4, 1907, judgment was entered in favor of the claimant for $2,587.50.