TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Inc.

v.

The UNITED STATES and the BENDIX CORPORATION and the Hewlett-Packard Company, Third-Party Defendants.

No. 127–62.

United States Court of Claims.

Feb. 17, 1967.

See also Ct.Cl., 370 F.2d 571.

---

Walter J. Blenko, Jr., Pittsburgh, Pa., attorney of record, for plaintiff; Walter J. Blenko, Pittsburgh, Pa., M. Victor

Leventritt, New York City, and Martin E. Hogan, Jr., Washington, D. C., of counsel.

Michael W. Werth, Washington, D. C., with whom was Acting Asst. Atty. Gen., J. William Doolittle, for defendant.

James L. O'Brien, Detroit, Mich., Donald J. Simpson, Chicago, Ill., and Jean C. Chognard, Palo Alto, Cal., for third-party defendants.

Before COWEN, Chief Judge, JONES, Senior Judge, and LARAMORE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

Plaintiff is the exclusive licensee of several patents relating to the manufacture of "printed circuit" boards for electrical apparatus.[1] Alleging that its patented invention was used without a license in the manufacture of certain articles purchased by the United States from the Bendix Corporation and the Hewlett-Packard Company, plaintiff seeks its statutory remedy of "reasonable and entire compensation" against the United States. 28 U.S.C. § 1498 (1964). Technograph contends that several of its patents have been infringed, but only two, Nos. 2,441,960 (Patent '960) and 2,706,-697 (Patent '697), are involved in the current motion. Under former Rule 19 (now Rule 23) of this court, the Bendix Corporation and the Hewlett-Packard Company have been brought in as third-party defendants on the basis of their contracts with the United States providing for indemnification against patent infringement liability.

This suit is one of a series of more than ten patent infringement actions brought by Technograph in various jurisdictions throughout the country. See Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442, 443 (C.A.7, 1966), cert. denied, 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547. In the District of Maryland, Bendix Avia-

1. Technograph Printed Electronics, Inc. of Winston-Salem, North Carolina, is exclusive licensee under the patents in issue and owns all substantial rights in those patents; Technograph Printed Circuits, Ltd. is a nominal party. For convenience we shall simply refer to "plaintiff" or "Technograph."

tion Corporation was charged with infringement of three patents, including Nos. '960 and '697.[2] The District Court, after trial, found the patents invalid for several reasons, including obviousness in view of the prior art. Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., 218 F.Supp. 1–67 (D.Md.1963). On appeal, the Fourth Circuit affirmed per curiam, stating: "After careful consideration of the record, the arguments and the briefs of counsel, we are persuaded that the patent claims are invalid for obviousness in the light of the prior art for the reasons fully discussed in the opinion of the District Court." 327 F.2d 497, 498 (1964), cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36.

Relying upon the Fourth Circuit's decision, the United States moved for summary judgment as to Patent Nos. '960 and '697. The argument was that the patents are invalid on a number of grounds including obviousness in view of the prior art. The Court of Appeals' judgment of patent invalidity was urged as having either res judicata or controlling effect. Plaintiff countered with allegations that the earlier decision "is grounded upon fundamental shortcomings of fact," and statements that it expects to present newly discovered evidence which will lead to a different result. On November 19, 1965, this court, by order and without oral argument, denied without prejudice the United States' motion.

The Government now renews its motion for partial summary judgment and asks the court, again, to hold that the plaintiff patentee should be collaterally estopped by the *Bendix Aviation Corp.*

decision to relitigate the validity of the '960 and '697 patents even though the United States was neither a party, nor in privity with a party, to the prior judgment. Alternatively, the defendant suggests that it was in privity with Bendix, the successful defendant in the earlier action.

■■ Especially for patent litigation, a traditional element of the doctrine of collateral estoppel has been the requirement of mutuality of estoppel. According to the received view, for a judgment to prevent relitigation of an issue once decided, the estoppel of the judgment must ordinarily be mutual. (The conventional doctrine recognizes some exceptions). Since an adjudication of patent validity in one action is not binding in a second action against a different defendant, the rule tells us that a patentee in a second action should not be bound by an adjudication of invalidity in an earlier suit. The Government submits, however, that this iron law of mutuality of estoppel has been corroding for some years, and specifically asks us to follow Nickerson v. Pep Boys—Manny, Moe & Jack, 247 F.Supp. 221 (D.Del.1965), in which the court rejected mutuality in a patent infringement action. At the Government's request, and in the light of decisions of the past three decades, and of professional commentary, we review the relevant case law, investigate the direction and extent of the erosion in the requirement of mutuality, and explore the basic policies at the core of the doctrine of collateral estoppel as it applies in this court and to patent-validity litigation.[3]

2. That *Bendix* suit specifically excluded any manufacture by Bendix for the United States since a district court lacks jurisdiction to adjudicate such liability. For such misuse, "the owner's remedy shall be by action against the United States in the Court of Claims * * *."—the remedy now sought. 28 U.S.C. § 1498 (1964).

3. Plaintiff has suggested that since the Maryland District Court had no jurisdiction to try, or the Fourth Circuit to consider, the claim which it makes in this court, the prior judgment cannot be con-

clusive as to any issue in this proceeding. It is well-established, however, that, assuming the presence of the other conditions for invoking collateral estoppel, if a court "has authority to determine the issue within the scope of its jurisdiction, all other courts are estopped from subsequently relitigating the same issue." Edgar v. United States, 171 F.Supp. 243, 248, 145 Ct.Cl. 9, 16 (1959). "Res judicata does not depend on principles of jurisdiction, but on principles of peace." Griswold, "Res Judicata in Federal Tax Cases," 46 Yale L.J. 1320, 1337 (1937).

## I.

We must start by acknowledging that the last word from the Supreme Court has been an express reaffirmation of mutuality of estoppel for patent-validity litigation. In Triplett v. Lowell, 297 U. S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), as in the case at bar, the plaintiff had sued in a district court to restrain infringement of its patents. The court of appeals, on review, held each litigated claim invalid. Plaintiff subsequently brought a second suit against different defendants for infringement of claims held invalid in the first action. The Supreme Court unequivocally announced that "neither reason nor authority supports the contention that an adjudication adverse to any or all the claims of a patent precludes another suit upon the same claims against a different defendant" [id. at 642, 56 S.Ct. at 647). See, also, id. at 644, 645, 56 S.Ct. 645.[4] Since 1936 the Supreme Court has not intimated any retreat from this holding. The same theory was followed in Maytag Co. v. Hurley Machine Co., 307 U.S. 243, 245, 59 S.Ct. 857, 83 L.Ed. 1264 (1939), where the opinion indicated that, once a patent claim had been declared invalid, it, alone or with other claims, might have been made the basis of a different suit against a different party. In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 601, 602, 68 S.Ct. 715, 92 L.Ed. 898 (1948), the Court recast its general position on res judicata and collateral estoppel without suggesting in any way that the defense could be used by one not a party to the prior suit (or a privy). More recently, in a res judicata situation, the Court prevented five defendants who were neither parties nor privies to the earlier action from invoking the prior judgment against the plaintiff on what was assumed to be the same cause of action. Lawlor v. National Screen Service Corp., 349 U.S. 322, 329–330, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

In patent litigation, the courts of appeals and the district courts have continued, with the one exception of the *Nickerson* decision, to adhere to the *Triplett* rule—even though the very same court may dispense with the requirement of mutuality in other contexts. Judge Learned Hand, speaking for the Second Circuit, said, "it must not be forgotten that the decision of a single court, whether district, or court of appeals, does not settle the question [of patent validity]. It is the usual, if not universal, custom of practitioners if the stake is enough, not to rest content with a single decision of invalidity, but to seek another forum. * * *" Harries v. Air King Products Co., 183 F.2d 158, 163 (C.A.2, 1950); see also Gold Seal Importers, Inc. v. Westerman-Rosenberg, Inc., 133 F.2d 192 (C.A.2, 1943); Bechik Products, Inc. v. Flexible Products, Inc., 225 F.2d 603, 606 (C.A.2, 1955); Tatko Bros. Slate Co. v. Hannon, 270 F.2d 571, 572 (C.A.2, 1959), cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185. Similar declarations have been made in the First Circuit (Automatic Radio Mfg. Co., v. Hazeltine Research, Inc., 176 F.2d 799, 808 (1949), aff'd, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950)); Third Circuit (Ur-

---

4. The *Triplett* decision accorded with the Court's previous statements in non-patent cases. See Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 127, 131, 32 S.Ct. 641, 56 L.Ed. 1009 (1912); Keokuk & Western R.R. v. State of Missouri, 152 U.S. 301, 315, 317, 14 S.Ct. 592, 38 L.Ed. 450 (1894); Cromwell v. County of Sac, 94 U.S. 351, 352, 353, 354, 360, 24 L.Ed. 195 (1876); and citations in 1B Moore, Federal Practice ¶ 0.412(1), at 1804 n. 10 (2d ed. 1965). The *Nickerson* opinion, supra, 247 F. Supp. at 222, criticized *Triplett* as not resting "upon too solid a foundation", primarily because the Court cited Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900), and Sanitary Refr. Co. v. Winters, 280 U.S. 30, 35, 50 S.Ct. 9, 74 L.Ed. 147 (1929)—two decisions dealing with comity, not res judicata or collateral estoppel. But Mr. Justice Stone, it seems to us, used those cases only with respect to his statement that "the earlier decision may by comity be given great weight in a later litigation and thus persuade the court to render a like decree" (297 U.S. at 642, 56 S.Ct. at 647), not as support for the holding on collateral estoppel.

quhart v. Commissioner of Internal Revenue, 215 F.2d 17, 20 (1954); see also, Pierce v. DuMont Laboratories, Inc., 156 F.Supp. 237, 239, 240, (D.Del.1957)); Fourth Circuit (S. H. Kress & Co. v. Aghnides, 246 F.2d 718, 720 (1957), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189); Fifth Circuit (Park-In Theatres, Inc. v. Waters, 185 F.2d 193, 195–96 (1950)); Seventh Circuit (Aghnides v. Holden, 226 F.2d 949, 950 (1955); Hazeltine Research, Inc. v. General Electric Co., 183 F.2d 3, 6 (1950); Appleton Toy & Furniture Co. v. Lehman Co., 165 F.2d 801, 803 (1948)); and very recently by the District Court for the District of Columbia (Abington Textile Machinery Works v. Carding Specialists Ltd., 249 F.Supp. 823 (1965)). See also Industrial Models Corp. v. Kurtz, 93 F.Supp. 336, 339–340 (E.D.Mich. 1950). In recent litigation involving the very patents now in suit, the Seventh Circuit held that the Fourth Circuit's decision in Bendix did not erect an estoppel and was not res judicata. The court determined that there existed genuine issues of material fact, and reversed an order granting the defendant's motion for summary judgment. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., supra, 356 F.2d 442 (1966).

■ In this court there is no square ruling in a patent case, but the guidelines drawn from non-patent litigation all point toward rejecting the estoppel defense here. We have adhered broadly to the principles of res judicata and collateral estoppel established by the Supreme Court. See Creek Nation v. United States, 168 Ct.Cl. 483 (1964). In discussing the objectives served by collateral estoppel, we have emphasized the interests of the actual parties to the prior litigation. Collateral estoppel, we have said, rests on "the need to avoid conflicting adjudications (involving the same parties)"; "if possible, the same parties should not be subject to conflicting determinations on the same point, both of which are binding." Armstrong v. United States, 354 F.2d 274, 290–291, 173 Ct.Cl. 944, 971–972 (1965). In other

cases in which collateral estoppel has been invoked, the court made findings on the status of the party seeking to benefit. Thus, in one tax case, the court determined that plaintiff's different legal identities in the first and second suits was "a difference in form only", but, following the *Sunnen* rule, found collateral estoppel inapplicable because the cases involved identical but separable facts. Bryan v. United States, 319 F.2d 880, 881, 162 Ct.Cl. 440, 443 (1963). In a series of decisions involving back pay for dismissed government employees, the United States has been permitted to invoke collateral estoppel only after a finding of privity. In those instances a government employee would contest unsuccessfully his dismissal in a district court, naming the head of his agency or members of the Civil Service Commission as defendants. The employee then sues the United States in the Court of Claims alleging wrongful dismissal and claiming back salary. While the nominal defendants are different, this court has held that, if a relevant question has been decided adversely to the plaintiff by a court of competent jurisdiction, "public policy precludes her from relitigating the same question here." Edgar v. United States, 171 F.Supp. 243, 245, 145 Ct.Cl. 9, 12 (1959). Subsequently the court explained: "While the question of privity was present in the Edgar case and the court's opinion is silent as to this issue, we believe the resulting adverse decision against plaintiff, and the overruling of the Levy and O'Brien cases [Levy v. United States, 118 Ct.Cl. 106; O'Brien v. United States, 124 Ct.Cl. 655], necessarily results in a holding that there is privity between the United States and its individual officers acting in their official capacities * * *." Larsen v. United States, 170 F.Supp. 806, 807–808, 145 Ct.Cl. 178, 180 (1959). This rule has been repeatedly followed. See, e. g., Green v. United States, 172 F.Supp. 679, 145 Ct.Cl. 628 (1959); Smithers v. United States, 150 Ct.Cl. 640 (1960); Kempinski v. United States, 164 Ct.Cl. 451 (1964), cert. denied, 377 U.S. 981, 84 S.Ct. 1889, 12 L.Ed.2d

749. The United States has been entitled to invoke the estoppel defense, although not formally a party to the first suit, but solely because of privity. In no instance has this court discarded the traditional requirement of mutuality [5]—as yet.

## II.

In the non-patent field, several state and federal courts have moved away, in particular circumstances, from the rule of mutuality, and some commentary has urged its general abandonment.[6] Probably the root opinion among those which have seen no "compelling reason * * * for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation" is Bernhard v. Bank of America, 19 Cal.2d 807, 811–813, 122 P.2d 892, 894 (1942)—involving an estate-representative's successive suits for misuse of alleged trust funds. Another leading case is Bruszewski v. United States, 181 F.2d 419 (C.A.3, 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632. An injured longshoreman sued the company servicing a ship owned by the United States for the negligence of that firm's employees. The court found that the injuries were not caused by such negligence. In a second suit, naming the United States as defendant, the Third Circuit said (id. at 421):

> This second effort to prove negligence is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a

second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.

Concurring, Judge Goodrich indicated that the court's opinion provided a rationale for depriving a patentee, suing for infringement, from having a day in court against a different defendant if the first suit had held the patent to be invalid; he would disagree with such a conclusion. Id. at 423. (Judge Goodrich's views are in accord with the Restatement of Judgments, § 93, illus. 10 (1942)). He joined in the result, however, because he considered that the relationship between the operating company and the United States was sufficiently close so that "what binds one should bind the other and * * * what frees one should free the other as against the same plaintiff." Ibid.

Still another noted departure from mutuality is Zdanok v. Glidden Co., 327 F.2d 944 (2 Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1388, 12 L.Ed.2d 298, in which the Second Circuit allowed a group of plaintiff-employees suing their employer for breach of a labor contract to invoke estoppel to prevent the employer from relitigating the contractual issue decided against it in a prior action brought by another group of similarly-situated employees. Confining its ruling to "these cases" (id. at 947), the court stressed the "test" character of the earlier suit and the very close relationship between the two actions (id. at 956).[7]

---

5. I. e., beyond the accepted exceptions from the requirement.

6. The late Professor Brainerd Currie is most notable among those who "have come * * * to bury the requirement, not to praise it * * *." See Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stan. L.Rev. 281, 322 (1957); and his later article, "Civil Procedure: The Tempest Brews," 53 Calif.L.Rev. 25 (1965). The defenders of the rule include Moore & Currier, "Mutuality and Conclusiveness of

Judgments," 35 Tul.L.Rev. 301 (1961); 1B Moore, Federal Practice ¶ 0.412(1), at 1801 (2d ed. 1965); Von Moschzisker, "Res Judicata," 38 Yale L.J. 299 (1929). The 1965 Currie article and Professor Moore's treatise provide extensive listings of state and federal cases discussing this issue.

7. In Kurlan v. Commissioner of Internal Revenue, 343 F.2d 625, 628 (1965), the Second Circuit also set forth, and appeared to rely upon, the particular circumstances.

In appraising the current status of the mutuality requirement it is significant that the jurisdictions which have discarded it for certain purposes have clung to it for others. Despite the breadth of the majority *Bruszewski* opinion in 1950, the Third Circuit appears to follow Judge Goodrich with respect to a patent suit comparable to the one now before us. Despite a holding of patent invalidity in the first suit, the court finds it "well-settled that the [patentee] * * * remained free to assert infringement against others in the courts, and this freedom extends to the issue of the validity of their patent claims." Urquhart v. Commissioner of Internal Revenue, supra, 215 F.2d at 20. See, also, Pierce v. Du Mont Laboratories, Inc., 156 F.Supp. 237, 239, 240 (D.Del.1957) (declaring it "axiomatic" that the same patent can be the subject of successive litigations throughout various circuits, and the *Triplett* decision does not "leave a wide area for discretion * * *."). A California appellate court, after *Bernhard*, likewise stated that "the law is well established that a decision adverse to a patent in one circuit is not binding on the courts of another in litigation upon the same patent between different parties." Bettis Rubber Co. v. Kleaver, 104 Cal.App.2d 821, 233 P.2d 82, 85 (Dist. Ct.App.1951). See, also, Nevarov v. Caldwell, 161 Cal.App.2d 762, 327 P.2d 111 (Dist.Ct.App.1958) (distinguishing between use of estoppel by the plaintiff and by the defendant in the prior action). The Second Circuit, after *Glidden*, has indicated that in certain types of cases mutuality is still essential; at least in multiple accident litigation, "mutuality should not so quickly be discarded." Berner v. British Commonwealth Pac. Airlines, Ltd., 346 F.2d 532, 541 (1965) cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966). In particular, some courts have emphasized, in permitting unilateral estoppel, that the estopped party has no new evidence to produce. Nickerson v. Pep Boys—Manny, Moe & Jack, supra, D.C., 247 F.Supp. at 224; United States v. United Air Lines, Inc.,

216 F.Supp. 709 (D.Nev.1962), aff'd on opinion below *sub nom.* United Air Lines Inc. v. Wiener, 335 F.2d 379, 404 (C.A.9, 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549; contrast Zdanok v. Glidden Co., supra, 327 F.2d at 954, 956.

From the course of decisions since *Bernhard* in 1942 it is clear to us that the courts have been moving cautiously, attending closely to the circumstances and needs of the particular case and type of litigation, rather than applying sweeping generalizations or the broad principle that "one day in court" is always enough. If appraisal of the factors pertinent to the concrete case plainly teaches that the prior judgment should be conclusive, mutuality may well be held unnecessary; but if that road is not the one clearly marked, relitigation will still be allowed. We, too, decline to ram the widest of breaches in the citadel of mutuality (to use Judge Friendly's words in *Glidden*, 327 F.2d at 954), and must therefore now inquire into the more limited question of whether in this patent litigation against the United States the Government should be permitted to estop the patentee by the latter's prior loss in the Fourth Circuit.

### III.

The conditioning factor is the continued adherence, as shown in Part I, supra, by the Supreme Court and the lower federal judiciary (except for one district judge) to the rule of mutuality for patent adjudication. If we are free at all to veer from that position, we should do so only for compelling reasons.

██ The prime reason given is that the patentee has had his full day in court and should not be suffered to reopen the identical issues by merely switching adversaries. Certainly the fact that the estopped party has already had his say is an important component of the doctrines of res judicata and collateral estoppel. But it is not the only component, and perhaps not the principal one. The doctrine also seeks to protect a litigant from the harassment and expense of having to

repeat his opposition to the same adversary on an issue already canvassed. Edgar v. United States, supra, 171 F.Supp. at 245, 145 Ct.Cl. at 12. In addition, it stabilizes legal relationships by not subjecting the same parties to "conflicting determinations on the same point, both of which are binding." Armstrong v. United States, supra, 354 F.2d at 290–291, 173 Ct.Cl. at 971–72. There is, too, society's need to put an end to controversies which have erupted between two persons. Southern Pac. R. R. v. United States, 168 U.S. 1, 49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). The point here is that defendant cannot avail itself of any of these considerations. A stranger to the *Bendix Aviation Corporation* suit in the Fourth Circuit, the United States is neither harassed, put to additional expense, nor compelled to relitigate an issue. Likewise, it is in no danger of being victimized by inconsistent decisions. The United States, for the first time, is being asked to try the issue of the validity of the '960 and '697 patents.

Collateral estoppel, it is also said, saves the time of the courts by forestalling needless relitigation. In proper circumstances, the doctrine can, of course, be so utilized. But the fact that a party can waive the application of collateral estoppel suggests that the needs of judicial administration are, at best, of subsidiary value; and, surely, "the doctrine of judicial finality is not a catch-penny contrivance to dispose of cases merely for the sake of disposition and * * * [clearing up] dockets * * *." 1B Moore, Federal Practice, supra, at 1810. *In each instance the question remains whether the new litigation is truly needless or redundant.*

In this connection, it is revealing that the postulate of "no more than one day in court" has not been allowed to dominate the principles of res judicata and estoppel even as between the very same parties. Several protective rules guard against the possibility that the former adjudication may have been erroneous, and permit reconsideration in a later action. For an issue to be conclusive, it must not only have been litigated in the prior suit, but also determined and not obiter to the judgment. State of Oklahoma v. United States, 146 Ct.Cl. 185, 194 (1959). Ordinarily, only a final judgment will be given res judicata effect. In tax litigation at the least, collateral estoppel cannot be invoked between the same parties "if the relevant facts in the two cases are separable, even though they be similar or identical," or if there had been an intervening change in the "legal atmosphere." Commissioner of Internal Revenue v. Sunnen, supra, 333 U.S. at 600, 601, 68 S.Ct. 715, 721, 92 L.Ed. 898 (1948). See General Motors Corp. v. United States, 163 F.Supp. 854, 142 Ct.Cl. 842 (1958), cert. denied, 358 U.S. 866, 79 S.Ct. 97, 3 L.Ed.2d 99; Griswold, "Res Judicata in Federal Tax Cases," 46 Yale L.J. 1320 (1937). See also United States v. Stone & Downer Co., 274 U.S. 225, 235, 47 S.Ct. 616, 71 L.Ed.1013 (1927) (classification of an import for customs purpose not conclusive in subsequent suit between same parties unless it involves the identical importation). Even if all preconditions are met, collateral estoppel will not apply to a question of law if injustice would result. Restatement, Judgments § 70 (1942). And "ultimate" or "mediate data" in a first suit can only conclusively establish an ultimate fact in a second suit. Evergreens v. Nunan, 141 F.2d 927, 929, 152 A.L.R. 1187 (C.A.2, 1944), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 ("Defeat in one suit might entail results beyond all calculation by either party; a trivial controversy might bring utter disaster in its train. There is no reason for subjecting the loser to such extravagant hazards * * *"). These rules all show that, even where the parties are identical, truth and correctness have their very important place.

For patent litigation there is a special reason why relitigation is not automatically banned as needless or redundant, and why error should not be perpetuated without inquiry. Patent validity raises issues significant to the public as well as to the named parties. Sinclair

& Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). It is just as important that a good patent be ultimately upheld as that a bad one be definitively stricken. At the same time it must be remembered that the issue of patent validity is often "as fugitive, impalpable, wayward, and vague a phantom as exists in the whole paraphernalia of legal concepts. * * * If there be an issue more troublesome, or more apt for litigation than this, we are not aware of it." Harries v. Air King Products Co., supra, 183 F.2d at 162 (per L. Hand, C. J.). Because of the intrinsic nature of the subject, the first decision can be quite wrong, or derived from an insufficient record or presentation.

The theory of unilateral estoppel would, however, bite sharply into the current process for sustaining good patents and rectifying erroneous holdings. Under present Supreme Court practice, certiorari will not often be granted in patent cases unless there is a conflict in the appellate court decisions. Cf. Rule 19 ("Considerations Governing Review on Certiorari") of the Revised Rules of the Supreme Court of the United States, 346 U.S. 967 (1954); Universal Oil Products Co. v. Globe Oil & Ref. Co., 322 U.S. 471, 473, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944); Triplett v. Lowell, supra, 297 U.S. at 644, 56 S.Ct. 645, 80 L.Ed. 949. It is not uncommon for a patentee who has met rebuff (like the plaintiff here) to seek to sustain its grant in other courts. The Supreme Court "has several times held valid the claims of a patent which had been held invalid by a Circuit Court of Appeals in an earlier suit brought by the same plaintiff against another defendant." Triplett v. Lowell, supra, 297 U.S. at 643, 56 S.Ct. at 648. If the estoppel effect of judgments were

expanded as the Government now suggests, the first federal court to adjudge that a patent is invalid would, in effect, be the final arbiter for all rights and duties flowing from that patent. The Supreme Court has carefully avoided an analogous, though lesser, danger posed by a too rigid application of the discretionary rule of comity in patent matters. Explaining that the obligation of comity is not imperative, the Court continued: "If it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle." Mast, Foos & Co. v. Stover Mfg. Co., supra, 177 U.S. at 488, 20 S.Ct. at 710, 44 L.Ed. 856. To escape this objectionable result of unilateral estoppel, the Supreme Court would be forced to alter its normal practice and consider granting certiorari more readily in the absence of conflicting decisions—an undesirable innovation not to be thrust upon the Court by others.

## IV.

Like considerations counsel great caution in discarding mutuality for cases brought against the Government in this court. Particularly in the fields of taxation and of pay claims by federal personnel it is common for the Government, having lost in one court or in one case, to try to sustain its position in another court or another case, without asking immediately for Supreme Court review. In tax matters, for instance, the Government has never been thought precluded from continuing to seek a conflict even though its view may have been rejected by several courts of appeals. See, e. g., Hanover Bank v. Commissioner of Internal Revenue, 369 U.S. 672, 675–676, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962).[8]

---

8. In the personnel field a well-known example comes from this court's history. In Moser v. United States, 42 Ct.Cl. 86 (1907), a naval officer sued the United States for retirement pay, his right of recovery depending upon whether his attendance as a cadet at the Naval Academy during the Civil War constituted "service during the Civil War" within the meaning of a federal statute. Moser's first suit was decided in his favor, as were three subsequent cases in which the court held that, by reason of its decision in the first *Moser* case, the question was res judicata. 58 Ct.Cl. 164 (1923), aff'd, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924). Between the first and second *Moser* cases, however, an-

To invoke unilateral estoppel broadly would jeopardize much of this accepted practice. And it would unfairly discriminate, we add, to free the Government from unilateral estoppel, so as to allow it to continue this practice, but to use the doctrine against claimants alone. Cases may arise, of course, in which it will be proper to extend the current exceptions from the mutuality requirement. But, at least for actions involving the United States, it would be a mistake to jettison the rule as a whole. As we have already pointed out (Part III, supra), patent litigation against the Government is not the area in which to create a new exception.

## V.

There are also two narrower grounds, more specific to this case, for rejecting the defendant's estoppel defense. The first is that the plaintiff has affirmatively declared that it possesses and expects to present new material which was not used in the earlier litigation in Maryland and the Fourth Circuit. As we have noted, the only case countenancing unilateral estoppel on patent-validity puts aside instances where additional evidence is to be proffered. Nickerson v. Pep Boys—Manny, Moe & Jack, supra, 247 F.Supp. at 224. In its recent Technograph opinion, the Seventh Circuit also referred to the possibility of new or additional evidence. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., supra, 356 F.2d at 447.

The other special ground is that, in the current state of the law, this plaintiff had every justification for believing that it would be able to pursue its claim against different defendants regardless of the judgment rendered in the first suit to be concluded. This is the teaching of the Supreme Court; and the practice of multiple suits in

patent litigation has long been recognized by the inferior courts. See Part I, supra. Consistently with this understanding, Technograph filed more than ten patent infringement suits in various courts and against different defendants. The Seventh Circuit has already upheld its right to sue in that area, despite the loss in the Fourth Circuit. Unlike the defendant in Zdanok v. Glidden Co., supra, Technograph did not designate the Fourth Circuit adjudication as its "test case", and "everyone [did not] expect [ed] their rights to be governed by the court's interpretation * * *" in the first case. 327 F.2d at 953, 956. We should not tell the plaintiff, at this stage, that defeat in his first suit now bars him from prosecuting the action against the United States in this court, Cf. Berner v. British Commonwealth Pacific Airlines, Ltd., supra, 346 F.2d at 540–541.

## VI.

Secondarily, defendant contends that it is in privity with Bendix, the defendant in the Fourth Circuit suit in which the '960 and '697 patents were held invalid with regard to Bendix's production for all purposes but governmental use. The Government argues that, as a customer of Bendix, it should be subrogated to that manufacturer's right to assert that the prior adjudication is conclusive in a subsequent suit brought by the same patentee. It relies upon the theory of Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907), and the rule of General Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc., 101 F.2d 178 (C.A.4, 1939) and Western Electric Co. v. Hammond, 135 F.2d 283 (C.A.1, 1943). We decline to decide this issue, at the present phase of the case, because the appropriate facts are not before us. Plaintiff asserts unequivocal-

other claimant brought suit under the identical statute. The court heard the case anew, and an additional statute, conclusively stating that Academy attendance did not constitute "service during the civil war," was brought to the court's attention; that plaintiff was denied relief. Jasper v. United States, 43 Ct.Cl.

368 (1908). If the second claimant were allowed to invoke the prior *Moser* judgment and estop the defendant from relitigating the "service" issue, the erroneous *Moser* decision would have been unnecessarily perpetuated without possibility of correction.

ly that "this case involves manufacturing operations not adjudicated in Technograph v. Bendix", and the defendant (the moving party) does not controvert that declaration, adequately or at all. The cases on which the Government relies have involved the same items (or types of items) in the purchaser's hands as were previously adjudicated in the suit against the manufacturer. It may be that the rule should be enlarged to cover all matters covered by the invalidated patent—not merely the same articles or processes—but before taking that extra step we should be in possession of the precise facts as to the differences, if any, between the operations and items involved in the present case and those involved in the Fourth Circuit case. See Anthony Grace & Sons, Inc. v. United States, 345 F.2d 808, 810, 170 Ct.Cl. 688, 691–692 (1965), rev'd on other grounds, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). If the defendant wishes to preserve this defense, the pertinent facts can be established at the trial.

■■■ A trial will be necessary in any event. Even if we were to adopt the Government's contention that it is in privity with Bendix and should therefore benefit from the latter's Fourth Circuit judgment, the Government is not excused from all possible liability to plaintiff. The *Bendix* decision would affect the Government's rights and duties only insofar as it is a customer of that manufacturer. As shown in the preceding parts of this opinion, the Government cannot use that decision as a general defense to a charge of patent infringement. It must still answer Technograph's claim with respect to equipment purchased from the Hewlett-Packard Company, which plaintiff also alleges infringes its patents. Hewlett-Packard has not been party to any final judgment adjudicating its purported infringement of plaintiff's patents.

## VII.

■■■ Neither does the court consider it appropriate to determine the validity of the '960 and '697 patents on this motion for partial summary judgment. To grant defendant's motion, there must be no genuine issue as to any material fact. That is not our case. We agree with the Seventh Circuit's decision dismissing a motion for summary judgment in a related suit; that court noted "the sharp and bitter dispute concerning the factual determinations" involved in this patent litigation. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., supra, 356 F.2d at 447. See also Anthony Grace & Sons, Inc. v. United States, supra, 345 F.2d at 810, 170 Ct.Cl. at 691–692. Needless to say, we do not express any opinion on the validity of the '960 and '697 patents. We think, however, that the plaintiff should be given the opportunity to present evidence before this court on the patents in issue.

The Government's renewed motion for partial summary judgment is denied and the case is returned to the trial commissioner for proceedings on the merits.