**TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Incorporated, Plaintiffs-Appellants, and Cross-Appellees,**

v.

**METHODE ELECTRONICS, INC., Defendant-Appellee,**

v.

**GTE AUTOMATIC ELECTRIC INCORPORATED, Defendant-Appellee and Cross-Appellant,**

v.

**WEBCOR ELECTRONICS, INCORPORATED, Defendant-Appellee,**

v.

**HOWARD HOLDING COMPANY, Defendant-Appellee.**

Nos. 72-1741—72-1745.

United States Court of Appeals, Seventh Circuit.

Aug. 27, 1973.

Rehearing Denied Sept. 14, 1973.

Sidney Bender, New York City, John W. Chestnut, Chicago, Ill., for plaintiffs-appellants.

Robert C. Keck, Lawrence W. Brugman, Chicago, Ill., Watson D. Harbaugh, Evanston, Ill., Theodore W. Anderson, Chicago, Ill., for defendants-appellees.

Before KILEY and SPRECHER, Circuit Judges, and ESCHBACH,* District Judge.

SPRECHER, Circuit Judge.

The history of these cases confirms the wisdom of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and why the doctrine it announced is particularly applicable here.

Between 1958 and 1963, Technograph Printed Circuits, Ltd., and Technograph Printed Electronics, Inc. instituted some '74 civil actions for patent infringement against approximately 80 manufacturers of electronic equipment in 18 different United States District Courts, and another action against the United States in the Court of Claims.[1] Prior to the litigation, the president of Printed Electronics, an American company, wrote to Printed Circuits, a British company:

"The Technograph patents are inherently weak and at heart only form the legal basis for making a claim against industry. Their real worth in America depends entirely how strongly they can be backed by both money, legal talent and influence.

&ast; &ast; &ast; &ast; &ast; &ast;

". . . We must litigate if we expect to extract worthwhile sums from industry."

The infringement actions were based upon three United States patents relating to methods for the manufacture of printed electric or magnetic circuits[2]— No. 2,441,960 ('960) issued on May 25, 1948, No. 2,706,697 ('697) issued on April 15, 1955, and Reissue No. 24,165 ('165) issued on June 12, 1956.

The first trial took place in the District of Maryland in an action against The Bendix Corporation (*Bendix*) where, after 29 trial days, the filing of 1001 exhibits, several additional days spent by the court in visiting the Bendix and plaintiffs licensed plants, 600 pages of post-trial briefs and two days of oral argument, Judge Watkins on May 27, 1963 held in a 67-page opinion that the claims at issue in all three patents were invalid. The Court of Appeals for the Fourth Circuit affirmed and certiorari was denied by the Supreme Court. Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., 218 F.Supp. 1 (D.Md. 1963), aff'd per curiam, 327 F.2d 497 (4th Cir. 1964), cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964).

The plaintiffs represented in other courts that the Maryland case was the "test case."[3] After the test case, the British company transferred its rights in the patents to the American Company.

The plaintiffs had filed six infringement actions in the Northern District of Illinois in 1962 and 1963. Two were settled and Judge Igoe granted summary judgment in favor of the remaining four defendants after Judge Watkins' decision on the theory that "one bite of the cherry ought to be enough." We reversed and remanded for further proceedings on the authority of Aghnides v.

---

&ast; District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

1. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 285 F.Supp. 714, 716 (N.D.Ill. 1968) (detailing the history of the Technograph litigation).

2. The manufacturing processes are fully described in Technograph Printed Circuits, Ltd.

v. Bendix Aviation Corp., 218 F.Supp. 1 (D. Md. 1963).

3. Technograph Printed Circuits, Ltd. v. Packard Bell Electronics Corp., 290 F.Supp. 308, 312 (C.D. Cal. 1968). See also, Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 474 F.2d 798, 804 (4th Cir. 1973).

Holden, 226 F.2d 949, 950 (7th Cir. 1955), where we cited Triplett v. Lowell, 297 U.S. 638, 642, 56 S.Ct. 645, 80 L.Ed. 949 (1936) for the proposition that "[n]either reason nor authority supports the contention that an adjudication adverse to any or all the claims of a patent precludes another suit upon the same claims against a different defendant." Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442, 448 n.3 (7th Cir. 1966), cert. denied, 384 U.S. 950, 1002, 86 S.Ct. 1570, 16 L. Ed.2d 547 (1966). Upon remand the four cases were consolidated for purposes of discovery and trial, were declared to be class actions so far as the defendants were concerned (Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 285 F.Supp. 714 (N.D. Ill. 1968)), and the plaintiffs' claims relating to Nos. '960 and '165 were dismissed with prejudice on April 24, 1968, with no appeal being taken therefrom.

In the meantime, all of the files, records, exhibits and transcripts from the *Bendix* case in Maryland had been sent to the United States District Court for the Central District of California, where 13 actions by the Technograph plaintiffs had been consolidated. The defendants in California moved for summary judgment on the ground of estoppel by the Maryland judgment. While the motions were pending, the court granted the defendants' motion to compel the plaintiffs to produce any evidence "above and beyond the evidence they presented" in the Maryland case.[4] The court on August 8, 1968 found that "the Response of plaintiffs . . . together with the unindexed box of documents . . . [filed with the Clerk] was a wilful, intentional, and conscious flouting and disobedience of the Orders of this Court . . . [which] warrant the severest condemna-

tion," whereupon the 13 actions were dismissed with costs in favor of the defendants. Technograph Printed Circuits, Ltd. v. Packard Bell Electronics Corp., 290 F.Supp. 308, 320 (C.D.Cal. 1968). There is no published record of an appeal from that judgment.

Meanwhile there also was activity in plaintiffs' case in the United States Court of Claims. After the court denied two motions by the government for partial summary judgment,[5] trial was held before Commissioner Davis who found claims 4, 10, 13 and 14 of No. '697 to be invalid on March 2, 1970. Technograph Printed Circuits, Ltd. v. United States, 178 Ct.Cl. 543, 372 F.2d 969 (1970). We are advised by counsel for the parties here that this decision is under advisement before the Court of Claims together with a government motion urging estoppel based on the *Bendix* case.

On May 3, 1971, the Supreme Court of the United States decided Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, where the Court concluded that *"Triplett* should be overruled to the extent it forecloses a plea of estoppel by one facing a charge of infringement of a patent that has once been declared invalid." 402 U.S. at 350, 91 S.Ct. at 1453. The Court added that a plea of estoppel must not be automatically accepted but that a determination should be made "whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case . . . ." 402 U.S. at 333, 91 S. Ct. at 1445. Thereupon, the defendants in four suits (which had been filed in the district court in Maryland, the *Martin-Marietta* case, in addition to the concluded *Bendix* case) moved for dismissal on the ground that *Bendix* constituted

---

4. The court's order appears as Appendix II, Technograph Printed Circuits, Ltd. v. Packard Bell Electronics Corp., 290 F.Supp. 326 (C.D. Cal. 1967).

5. Technograph Printed Circuits, Ltd. v. United States, 177 Ct.Cl. 919, 370 F.2d 571

(1966) and 372 F.2d 969 (Ct.Cl. 1967). In the latter case, the Court of Claims relied upon Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936) and the possibility of new or additional evidence, 372 F.2d at 978–80.

collateral estoppel. Judge Watkins, after carefully applying the *Blonder-Tongue* standards for determining whether the plaintiffs had a full and fair trial in *Bendix* and after evaluating plaintiffs' contentions as to why they did not, including virtually all the contentions urged before us in the present case, sustained the pleas of estoppel and dismissed the cases on March 20, 1972. Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 340 F.Supp. 423 (D.Md. 1972).

On May 31, 1972, Judge Will, who had by that time fully tried the four Chicago consolidated cases [6] agreed with Judge Watkins that the *Bendix* case presented the plaintiffs with a full and fair opportunity to establish the validity of their patents and that it was "just and equitable to allow the plea of estoppel," thus dismissing the consolidated cases before him. Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 174 U. S.P.Q. 297 (N.D.Ill. 1972).

Thereafter on February 20, 1973, the Court of Appeals for the Fourth Circuit affirmed Judge Watkins in Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 474 F.2d 798 (4th Cir. 1973). Judge Widener in a detailed and exhaustive consideration of the application of *Blonder-Tongue* to *Bendix* in view of plaintiffs' multiple contentions against its application, concluded (474 F.2d at 811):

"Here, the same plaintiffs considered *Bendix* a test case by which they sought to establish the validity of Eisler's patents '165, '960, and '697. They now seek to relitigate the issue of validity as to '697. They failed to convince the district court in *Bendix* of its validity, and they failed on appeal to convince us that the district court was wrong in the instant cases. Plaintiffs have failed to convince the same district judge who decided *Ben-*

*dix* that they did not have a full and fair opportunity to litigate in *Bendix*. Again, we agree with the district court. We are of opinion that the plaintiffs had a full and fair opportunity to litigate the validity of '697 in *Bendix* and that it is just and equitable to allow defendants' pleas of estoppel. We believe the instant cases show precisely why the Supreme Court, in *Blonder-Tongue,* overruled *Triplett* and commenced the sustaining of pleas of estoppel by judgment in certain patent cases."

We agree with Judge Widener and the Fourth Circuit, which considered virtually the same contentions made here by the plaintiffs for the non-application of *Blonder-Tongue.* We also agree with Judge Will who had the opportunity to hear all of plaintiffs' evidence and to evaluate it in the light of the *Blonder-Tongue* standards for determining whether *Bendix* was in fact a full and fair trial.

Subsequent to oral argument, plaintiffs urged by letter that we consider our recent decision in Bourns, Inc. v. Allen-Bradley Co., 480 F.2d 123 (1973), where in an opinion by Mr. Justice Clark, sitting in the Seventh Circuit by designation, we held that *Blonder-Tongue* does not apply to claims not litigated in the prior case. Plaintiffs have argued that *Bendix* adjudicated the invalidity of method claims 4, 5, 10, 14, 15 and 16 of '697 and that in the present cases claims 11, 12 and 13 are also involved. However, prior to the trial before Judge Will, the parties agreed to finding of fact No. 23 which reads:

"Claims 11, 12 and 13 are basically the same as claim 10 except for the specific means of printing; they are contingent upon claim 10 and will either stand or fall with claim 10."

■■ Even without the stipulation, a reading of claims 10, 11, 12 and 13

---

6. The record brought up to us from Judge Will included 17 volumes of pleadings, 42 volumes of transcript, a great number of de-positions, 4 cartons plus 8 folders of exhibits, and a box of "confidential documents."

demonstrates the complete dependence of 11, 12 and 13 upon claim 10.[7]

Furthermore, the same contention was made in the Fourth Circuit proceeding where the District Court found plaintiffs had there conceded that, although the *Martin-Marietta* case involved claims 4 and 10–14 and *Bendix* involved 4, 5, 10, 14, 15 and 16, the issues in both cases were "identical". 340 F.Supp. at 425. That fact was not contested on appeal. 474 F.2d at 802.

Under all of these circumstances the invalidity of claims 11, 12 and 13 were established by *Bendix*.

 Defendant GTE Automatic Electric Inc. has cross-appealed from the trial court's refusal to award it costs and attorney fees. In this circuit, attorney fees are only awarded under 35 U.S.C. § 285 in exceptional cases "to prevent gross injustice and where fraud and wrong-doing are clearly proved." Sarkes Tarizan Inc. v. Philco Corp., 351 F.2d 557, 560 (7th Cir. 1965).

Although the defendants rely upon a 1951 statement by Eisler, the inventor of '960, '165 and '697, that "we have fooled the Patent Office" and the 1956 statement by the president of one of the plaintiffs that the patents were "inherently weak," we note in Judge Will's opinion that the defendants "were apparently content to go on litigating indefinitely over the validity of a patent no matter how frequently it had been found invalid." 174 U.S.P.Q. at 299. In addition, until the *Blonder-Tongue* decision, the plaintiffs were justified in relying at least to some extent upon Triplett v. Lowell. Thus we find that

Judge Will did not abuse his discretion in declining to find this to be the "exceptional" case. We do, however, assess all costs of these appeals against the plaintiffs.

The judgment is affirmed in all respects.

Affirmed.

7. "10. A method of manufacturing a component of electric and magnetic circuit systems involving an insulation backed conductive pathway pattern, which comprises providing insulation backed foil, then printing a negative representation of the pattern upon said foil, depositing a layer of metal dissimilar to the metal of said foil upon all exposed parts of said foil, then removing said representation from the foil, and finally removing all parts of the foil exposed by said removal of the representation by chemical action attacking the metal of said foil but not said deposited dissimilar metal whereby said pathway pattern is formed.

"11. The method of claim 10 wherein the negative representation of the pattern is produced by letterpress printing.

"12. The method of claim 10 wherein the negative representation of the pattern is produced by offset printing.

"13. The method of claim 10 wherein the negative representation of the pattern is produced by photo-mechanical means."