Annette **HEYMAN**, Individually, et al.,
Plaintiffs-Appellees,

v.

**Robert S. KLINE et al., Defendants-**
**Appellants.**

**Nos. 1057–1060, Dockets 35418, 35419,**
**35625, 35626.**

United States Court of Appeals,
Second Circuit.

Argued July 15, 1971.

Decided Jan. 3, 1972.

As Amended on Rehearing
March 2, 1972.

Oakes, Circuit Judge, dissented and
filed opinion.

Jon O. Newman, Hartford, Conn., for plaintiffs-appellees.

J. Daniel Sagarin, Bridgeport, Conn., for plaintiffs-appellees on petition for rehearing.

John R. Bush, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., and William B. Rush, of Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for defendants-appellants.

Before FRIENDLY, Chief Judge, and LUMBARD and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Robert Kline appeals from a judgment of the District Court for Connecticut which held that defendant Kline, a citizen of Florida, had breached his employment contracts with plaintiffs, all citizens of Connecticut, and that a July 16, 1968, assignment to Kline, among others, by Annette Heyman of an option in a piece of Tampa, Florida, real estate never became effective. The court awarded plaintiffs $40,452.58 damages for breach of the employment contracts, declared that Kline was entitled to no interest in the Tampa real estate either under the July 16 assignment or as consideration for his employment services, and enjoined him from bringing any suits or making any claims regarding the property.[1]

Kline and his attorneys, Harvey B. Oshins and John R. Bush, also appeal from that part of the court's judgment holding them in contempt for filing suit in the Hillsborough County Court of Florida to determine title to the Tampa land after the district court had issued a temporary restraining order (TRO) enjoining such a suit.

We hold that Kline was improperly denied a jury trial on the questions of whether he had breached his employment contracts and whether he was entitled to punitive damages as a result of Mrs. Heyman's alleged breach of her fiduciary relationship with him. The judgment that Kline had no interest in the Tampa real estate also is reversed inasmuch as its determination will depend upon questions first passed upon by the jury.

The facts of this case, undisputed except where otherwise noted are as follows:

Robert Kline was employed by Lazarus Heyman, Mrs. Heyman's husband and

---

1. After the court's order had issued plaintiff began a contempt proceeding by serving an order to show cause why Kline and his wife Jeanne Kline should not be held in contempt for failure to comply with the court's judgment. Kline had purported to assign one-half of his interest in the land to Mrs. Kline in August 1969. Kline appeared in the proceeding and executed a quitclaim deed suggested by the court and plaintiff withdrew her application for a contempt order against him.

Mrs. Kline, who was never a party to this proceeding, appeared specially and presented the defense that the district court lacked jurisdiction over her in both the plenary action and the contempt proceeding. The court held that it did have jurisdiction and a final judgment of contempt was entered against her.

This court reversed, holding that Mrs. Kline was neither a "nominee" of Kline nor in "active concert or participation with him," see Rule 65(d), F.R.Civ.P., and that the district court lacked jurisdiction over her. Heyman v. Kline, 444 F.2d 65 (2d Cir. 1971).

testator, pursuant to a written contract of March 31, 1968. The contract provided that Kline would work exclusively for Heyman in the development of real estate, particularly a 73-acre parcel of Tampa, Florida land on which Heyman had an option. In consideration for his services, Kline was to receive $20,000 per year, and a bonus if Heyman determined that one was appropriate. Kline was entitled to use the bonus money to invest as a partner to the extent of 15% in any of Heyman's real estate ventures.

In May, 1968, Lazarus Heyman died. Shortly thereafter, Kline and Mrs. Heyman orally agreed to continue Kline's employment contract. On June 15, 1968, and again on July 15, 1968, Mrs. Heyman, as executrix of her husband's estate, paid $5,000 to renew the option on the Tampa, Florida, land. On the advice of tax counsel, Mrs. Heyman, as executrix, executed an assignment of the option to herself, to her son, Samuel, to her daughter, Abigail, and to Kline on July 16, 1968. Mrs. Heyman signed only the ribbon copy which was given to Samuel to hold for her. Both Mrs. Heyman and Samuel testified that the assignment was never delivered to Kline, but that he found it going through office files. Kline testified that Samuel gave him a copy of the assignment when he returned from a business trip. Judge Timbers accepted the Heymans' version of the events and found that requisite legal delivery of the assignment had never in fact been made and thus that the assignment was ineffective.

Kline continued to work for Mrs. Heyman under the oral agreement until September 9, 1968, when they signed a new written agreement. The agreement provided that Kline would work as a developer of real estate for the Heymans and would have the right to participate in any real estate ventures entered into by the Heymans to the extent of 15%. The contract also recited that it was "understood" that Kline had "opted to participate to the extent of 15% in our Tampa venture" and that, "[a]s a 15% partner," he would be liable for his proportional share of the expenses. In accordance with his arrangement with the Heymans concerning the sharing of expenses associated with the acquisition of the Tampa land, Kline made several payments through December 1968 which totalled $13,591.62.

In August 1968, Mrs. Heyman exercised the option and the closing took place on December 9, 1968. According to Kline's brief, his interest "would have amounted to $600,000.00 to $1,000,000.00 less his 15% share of principal and costs."

In January 1969, Annette Heyman discharged Kline for alleged breaches of his employment contract. At trial Judge Timbers found, after hearing disputed evidence, that Kline had committed "numerous material" breaches of his employment contracts: e. g., submitting fraudulent expense vouchers; performing real estate services for persons other than the Heymans in violation of the exclusivity provision of the contract; accepting a kickback from one of the tenants.

On appeal, Kline argues that the district court erroneously denied his timely filed written demand, under Rule 38, F.R.Civ.P., for a jury trial on all issues so triable. We agree. Kline was denied a jury trial despite his demand therefor, because the district judge found that he had waived his right to jury trial by his counsel's actions at a pretrial conference. In our view, the record does not show any waiver of Kline's right to jury trial.

On February 12, 1970, approximately 13 months after Kline had been discharged, Annette Heyman filed suit in the District of Connecticut seeking damages for Kline's breach of contract and asking for injunctive and declaratory relief to the effect that Kline had no interest in the Tampa property. At the same time, to bar Kline from initiating any legal proceedings with respect to the land, the plaintiff moved for a TRO which Judge Timbers signed that day. No notice of this application was given to the defendant or his counsel and Mrs. Heyman's counsel merely asserted in the applica-

tion that notice should not be required because "to do so would permit the immediate and irreparable injury, loss and damage to plaintiff Annette Heyman described in the verified complaint. . . ."[2] After Judge Timbers signed the TRO at 4:00 p. m. it was personally served on Kline at 11:30 that night in Largo, Florida.

On February 13, 1970, Kline filed a quiet title suit in the County Court of Hillsborough County, Florida, alleging his 15% interest in the 73-acre tract in Tampa.

On February 20, 1970, counsel for both parties appeared before Judge Blumenfeld in Bridgeport. Thomas J. Dolan, Esq., appeared specially for Kline and filed a motion to dismiss the complaint for lack of jurisdiction. It was agreed by counsel that the ruling on that motion and the hearing on the plaintiff's motion for a preliminary injunction should be postponed until February 24 when they could be heard by Judge Timbers who had issued the TRO. It was also agreed that the TRO would remain in effect until then.

On February 24, 1970, counsel for Mrs. Heyman filed a motion charging Kline, his New York counsel, Harvey B. Oshins, and his Florida counsel, John R. Bush, with contempt, alleging that the TRO had been violated when Kline's lawsuit was filed in Florida. The hearing of this motion and of the other pending applications were postponed until March 3, 1970 by agreement of counsel.

On March 3, 1970, Judge Timbers heard Kline's motion to dismiss and later denied it with an opinion filed March 19, 1970.[3] Hearings on the motions for a preliminary injunction and for judgments of civil contempt were postponed until March 25, 1970, Kline's counsel consenting to continuance of the TRO.

On March 25, Judge Timbers held an extended conference with counsel in his chambers in order to schedule the hearings on the motion for a preliminary injunction and the motion to adjudge Kline and his attorneys in contempt. Neither party was present. Mrs. Heyman was represented by her attorneys, Jacob D. Zeldes and John R. Needle, and Kline by his attorney, Thomas J. Dolan. After some discussion, Judge Timbers suggested that the parties agree to the use of the Rule 65(a) (2), F.R.Civ.P., procedure by which trial on the merits could be consolidated with the hearing for a

2. There is considerable doubt that the plaintiff made an adequate showing under Rule 65(b) of the Federal Rules of Civil Procedure to justify the granting of the TRO without notice. The only allegation in the complaint that supported the TRO was that "[d]efendant's threatened conduct . . . may prevent plaintiff Annette Heyman and her tenant from obtaining financing for the proposed shopping center and cause plaintiff Annette Heyman's tenant to terminate said lease . . . ." It is unlikely in the extreme that any such dire consequences would have resulted from the short delay needed to notify Kline or his attorney so that they might be heard on the application for a TRO. Moreover, Mrs. Heyman's attorney made no certification to the court of "reasons supporting his claim that notice should not be required." The fact that Kline was served in Florida less than eight hours after the TRO was signed and filed in Bridge-

port would seem to indicate that notice could in fact have been given him. Rule 65(b) (2), F.R.Civ.P.

3. Kline advances that contention in this court, arguing that Mrs. Heyman has really brought a quiet title suit regarding Florida land in a Connecticut court. A quiet title proceeding, of course, takes place only in the state of the res. Huntington v. Attrill, 146 U.S. 657, 669, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). However, Kline's argument founders on the case of Massie v. Watts, 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810). There Chief Justice Marshall distinguished between a quiet title proceeding and a case in which the relief requested might affect title, but title is dependent on the construction of a contract between two parties. In the latter case, a court of equity could take jurisdiction over the parties and order any necessary equitable relief. See United States v. Ross, 302 F.2d 831 (2d Cir. 1962).

preliminary injunction.[4] He also suggested that the contempt motion be heard on the same date. During this discussion, which was concerned solely with the mechanics of scheduling, the following colloquy took place:

Judge Timbers: . . . .

And I would say that I would hope to handle it myself, simply because I have been familiar with it and I have had it up to this point and it would probably save some time.

. . . . . . .

But I have in mind that I could handle this case in the third floor courtroom, being a non jury case, and I will try to keep myself open to handle it if counsel could agree on that date.

But I think I might also say, if there is agreement on a day and we set it firmly, I will insist we go forward; and I think it really should be a peremptory assignment, barring illness on the part of counsel or the judge.

Mr. Zeldes (for plaintiff): Is that satisfactory to you, that date? [Pause] I think it may squeeze me, Your Honor.

Mr. Dolan (for defendant): I am quite certain it is, your Honor. I don't have my client here. I would have to call him.

But I see that this would have to take precedence over anything that he will have on his schedule.

Mr. Dolan, for the defendant Kline, also pointed out that he would have to file an answer and a "cross-complaint" seeking relief against the plaintiff. It was agreed that the answer and counterclaim would be filed by April 2, the plaintiff would close the pleadings by April 9 and that all discovery was to be completed by April 20. Judge Timbers then set the case for April 27, 1970.

■ On March 31, 1970, Kline filed his answer and counterclaim. Specifically, he sought damages for breach of his employment contract with Annette Heyman, punitive damages for her breaching the contract and excluding Kline from an interest in the Tampa land and, on the basis of the employment contracts and the July 16 assignment of the option, he requested various forms of equitable relief with a view to establishing his interest in the Tampa land. The answer and counterclaim were accompanied by a written demand for a jury trial.[5]

Mrs. Heyman then moved to strike the demand for a jury and, after argument on April 20, Judge Timbers granted the motion. In striking the demand he said, "[I]f there had been any basis for claiming a jury trial, it seems to me then

---

4. Rule 65(a) (2) provides:

> *Consolidation of Hearing with Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a) (2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

5. Kline's answer in which he demanded a jury trial was sworn to by him in Florida on March 27, 1970. It appears to have been prepared by his Florida attorney, John R. Bush. Kline's Connecticut attorney, Thomas J. Dolan, withdrew on April 8, and was replaced by William B. Rush who had filed appearance on April 1st. The appellee's brief argues that this change of counsel was made to avoid the alleged March 25 "waiver" of jury trial by counsel on behalf of Kline. It is noteworthy that Mrs. Heyman also changed counsel after the March 25 conference. Jon O. Newman appeared on April 2, 1970 in place of Jacob D. Zeldes.

In any event, we hold that short of a party's consent, or authorization of counsel to consent, there could be no effective waiver except by operation of Rule 38, F.R.Civ.P.

[March 25] and there was the time to say so. If you are talking about Rule 65 you are talking about equitable proceedings. . . . [T]here was—to me anyway—a clean and unequivocal agreement to try this case to the Court without a jury as to all issues."

■■ We disagree. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). "[T]he right of jury trial is fundamental, [and] courts [must] indulge every reasonable presumption against waiver." Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). The Federal Rules of Civil Procedure have worked out a careful scheme by which defendants may waive their right to jury trial: jury trial is waived if no party has demanded a jury once ten days have passed from the filing of the final pleading. Rule 38, F.R.Civ.P.[6] At the time of the March 25 conference, Kline still had not filed his answer.[7] Accordingly, he was entitled to demand a jury trial unless he himself had waived the right or his attorney had waived the right after being authorized by Kline to do so. It is clear that no such waiver occurred.

Though Judge Timbers had noted in passing that this was a "non jury trial," the attorneys did not affirmatively agree to this suggestion and they may well have understood it to refer only to the hearing on the preliminary injunction. Moreover, Kline was in Florida, as he had been during most of the preliminary stages of the case, and not in the judge's chambers, when Judge Timbers made his statement. Kline's only appearance prior to April 27 was at the March 3 hearing. Thus his attorney's failure to object to the judge's statement was done without Kline's knowledge, and in a setting where it was not unreasonable to believe that all that the judge would pass upon was the demand for a preliminary injunction.

■ The right to jury trial is too important, see Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988 (1959); and Lumbard, Trial by Jury and Speedy Justice, 28 Wash. & Lee L.Rev. 309, 311–13 (1971), and the usual procedure for waiver of the right too clearly set out by the Civil Rules for courts to find a knowing and voluntary relinquishment of the right in a doubtful situation. The failure of Kline's counsel to respond to an offhand remark by Judge Timbers during the scheduling of a hearing for a preliminary injunction when Kline had yet to file his answer, and there was still time before a jury demand had to be made, cannot fairly be construed to evidence any in-

---

6. Rule 38 provides:

 . . . . .

 (b) Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

 . . . . .

 (d) The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d)

constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

7. On February 20, 1970, well before the answer was due on March 4, 1970, Kline had moved to dismiss the complaint. Judge Timbers did not file his ruling on this till March 18. Accordingly Kline's answer was not due till March 28. Rule 12(a), F.R.Civ.P. Meanwhile, on March 25, the court had extended Kline's time to file until April 2, 1970.

tent to waive Kline's right to jury trial.[8] We would fail to recognize the important place of the civil jury in the pantheon of our liberties were we to hold its use so easily lost. Waiver, prior to the time for demanding jury trial has begun, should be based on nothing less than an affirmative representation by the party himself, or by his duly authorized counsel, on representation to the court that the matter has been discussed with the client and that the client has determined not to exercise his right to jury trial. In the absence of such affirmative action by Kline or his attorney, and in view of Kline's timely filed demand, we hold that it was error for the district judge to deny Kline a jury trial on the contract issues.

Moreover, as Kline had yet to file his answer and counterclaims, the nature of all the issues in the case could not have been known at the time of the March 25 conference. Kline was entitled to a jury trial on his counterclaim which alleged that Mrs. Heyman had breached the employment contract by discharging him without cause as well as on his claim for punitive damages. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

We note that the district judge evidently thought that "if you are talking about Rule 65 proceedings, you are talking about equitable proceedings," and therefore there is no right to jury trial. But though Rule 65(a) (2) does deal with the consolidation of a hearing for a preliminary injunction with trial on the merits, the rule specifically states "This subdivision (a) (2) shall be so construed and applied as to save the parties any rights they may have to trial by jury." Agreement to a consolidation of trial on the merits with a hearing for a preliminary injunction by itself in no way amounts to a waiver of the right to jury trial.[9]

We must consider, then, to what extent the district court's determinations here are infected by its erroneous denial of a jury trial. The constitutional guarantee of jury trial extends, of course, only to claims for legal relief; equitable claims are properly tried only to a judge. It is now fundamental, though, that when legal and equitable claims are tried together, common questions of fact must be decided by the jury in order to preserve the integrity of the seventh amendment guarantee. E. g., Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510–511, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472–473, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The Court's concern in these cases has been the res judicata or collateral estoppel effect of a prior determination of an equitable claim upon questions common to a legal claim.

On this appeal, however, Mrs. Heyman has specifically stated that in the event this court finds error in the district court's denial of Kline's demand for a jury trial, she agrees to waive all collateral estoppel effect of the district judge's determination of the equitable claims with respect to the legal claims which must be retried. Thus, we might remand only the legal claims, letting the equitable claims stand. De novo consideration of all relevant facts on the legal claims could then be had and no infringement upon the seventh amendment guarantee arguably would result from permitting the determination of the equitable claims to stand. While such reasoning is perhaps constitutionally

8. Accord, Bruce v. Bohanon, 436 F.2d 733 (10th Cir. 1970), cert. denied Marathon Oil Co. v. Bruce, 403 U.S. 918, 91 S.Ct. 2227, 29 L.Ed.2d 694 (1971). See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959) (Trial court's discretion to try equitable issue just to the court must be "very narrowly limited and must, wherever possible, be exercised to preserve jury trial").

9. Of course, had the district court honored the demand, it is more likely that the court would first have heard the application for preliminary relief and would then have set the jury issues for a trial at some later time.

sound, we nevertheless consider appellees' waiver inadequate to permit us to remand only the legal claims under the employment contracts.

 In waiving the collateral estoppel effect of the determination of the equitable claims, Mrs. Heyman can dispose of only her own interest. But among other things, the doctrine of collateral estoppel rests "firmly on the need to avoid conflicting adjudications (involving the same parties). . . . If possible, the same parties should not be subject to conflicting determinations on the same point, both of which are binding." Armstrong v. United States, 354 F.2d 274, 290–291, 173 Ct.Cl. 944 (1965). See also Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 977, 178 Ct.Cl. 543 (1967). In this respect, Kline has a substantial interest in the collateral estoppel effect of the determination of the equitable claims under the employment contracts; yet, he has not entered any waiver. And even putting aside whatever interest Kline may have, this court, in furtherance of its responsibility to preserve the integrity of the judicial process, has a substantial concern in the consistent determination of any particular question. Were we to remand only the legal claims, we would create a situation ripe with the possibility of inconsistent determinations of the same question. Consequently, we conclude that all claims and counterclaims—both legal and equitable—must be remanded for retrial.

Upon retrial, the jury's verdict will control whether Mrs. Heyman is entitled to any equitable and declaratory relief. The declaratory relief requested—that Kline has no interest in the Tampa parcel—is much like the equitable remedies of cancellation and rescission and its disposition by the court will depend in part on the jury's determination of whether Kline breached his employment contracts and in part on the jury's determination of whether the July 16 assignment was effective.[10] As for Kline's claims under his employment contract with Mrs. Heyman, the equitable counterclaims will have to await the jury's determination of whether he breached his contract; the counterclaim for damages will be directly passed upon by the jury.

 The district court held Kline and his attorneys in civil contempt for violating the TRO of February 12, 1970 forbidding them to institute proceedings with respect to the Florida land in any other court. In our view, the injunction was erroneously issued, see *infra*, and since, unlike convictions for criminal contempt, judgments of civil contempt fall when the order underlying them is vacated, the civil contempt must be reversed. United States v. United Mine Workers of America, 330 U.S. 258, 294–295, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Cliett v. Hammonds, 305 F.2d 565, 570 (5th Cir. 1962).

 Federal courts and state courts are courts of overlapping jurisdiction and, generally, one will not enjoin proceedings in another. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). A recognized exception is when one court, adjudicating an *in rem* proceeding in which it must assert control over the *res* in order to have jurisdiction, enjoins another court seeking control over the same *res*. 28 U.S.C. § 2283; see Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). Here, however, the federal court proceeding was *in personam* and its jurisdiction was based on the diversity of citizenship of the parties, not on its control of the *res*—the 73-acre tract of land in Tampa, Florida. Since the court did not need to issue the TRO to protect its jurisdiction, see United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938), the TRO should

---

10. Under Connecticut law, breach of contract warrants the cancellation of Kline's interest in the land. Benassi v. Harris, 147 Conn. 451, 162 A.2d 521 (1960); Caramini v. Tegulias, 121 Conn. 548, 186 A. 482 (1936).

not have issued and the contempt findings based upon it must be vacated.

Reversed.

OAKES, Circuit Judge (dissenting):

I would adhere to the decision of the court before rehearing, slip op. 5427, 5440–41, in holding that Kline's counterclaim under the July 16 assignment of the option on the Tampa land need not be retried. As the court originally pointed out, Kline sought only equitable relief with respect to the July 16 assignment and the issue upon which the district Judge disposed of the issue of validity of the assignment—the absence of legal delivery—is "clearly unique" to that issue. There is no reason why this issue could not properly be severed under Rule 42 (b), Fed.R.Civ.P. On the merits there is no basis for disagreeing with the district court's determination that a legally effective delivery of the option had never been made. In my view, the district judge's finding to this effect is and should be the law of the case. Therefore, to so much of the opinion as would now permit the assignment issue to go to the jury on remand, I dissent.