Rosa **GALLARDO**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

**UNITED STATES** of America, Third Party Plaintiff,

v.

Jose **NUNEZ**, Third Party Defendant.

No. CV–80–0296.

United States District Court, E.D. New York.

Oct. 6, 1988.

---

**20.** This Memorandum–Decision & Order supercedes the court's Order of October 12, 1988.

Toberoff & Tessler, New York City, for Palacio.

George Spitz, New York City, for Jose Nunez.

Diamond, Rutman & Costello, New York City, for Jose Nunez.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

A jury trial was concluded in this consolidated action on the question of liability. The action arose out of a single collision between a Postal Service truck and an automobile driven by Nunez and having four passengers: Gallardo, Mesa, Lopez, and Palacio. The four passengers sued the United States and Nunez to recover for their personal injuries and Nunez sued the United States as well for his injuries. In addition, the two defendants, the United States and Nunez, each filed third party complaints against the other. A jury was demanded by plaintiffs in their action against Nunez and by Nunez in the third party action brought against him by the United States. The claims against the United States, being grounded in the Federal Tort Claims Act (FTCA), could only be tried to the court. 28 U.S.C. § 2402. Presently before this court is the task of determining the legal implications of the independent factual findings made by the court and by the jury in this case.

### A. *The Two Verdicts*

At the conclusion of trial, the jury was instructed to respond to the following three questions: (1) Was the accident caused by the negligence of the Government driver?; (2) Was the accident caused by the negligence of Nunez?; (3) If the accident was caused by the negligence of both, what percentage of the total negligence causing the accident is attributable to each driver? The jury answered the first question "No," and thus did not reach the third question. It answered the second question "Yes."

After the jury was dismissed, I immediately made the following statement to the parties on the record:

As far as the United States Government is concerned, the judgment of (sic) verdict of the jury is entirely advisory, as far as I am concerned. And insofar as the verdict against Mr. Nunez was returned by the jury, of course, that verdict is not advisory.

\* \* \* \* \* \*

Insofar as the verdict by the jury against the Government is concerned, I reject entirely the verdict of the jury. I find it not supportable to the slightest degree by the evidence in this case.[1]

In response to questions by the parties regarding the third party claims between the defendants, I stated as follows:

> I'm not certain about that—which is why I haven't made any pronouncements with respect to that. It's my understanding with respect to the third party claim which the Government brought against Mr. Nunez that the jury is also advisory, but I want to examine that before I do anything further—which is why I am reserving on that.

Tr. at 812.

■ In supplemental memoranda submitted on this question, the parties agree that as to the government's third party claim against Nunez, the Seventh Amendment guarantee of a jury trial does apply. Even when the original claim against the government is a tort claim triable only to the court, a private party impleaded by the government for contribution or indemnity may demand a jury trial with respect to the issues raised by the third party claim, including the issue of comparative fault. *In Re N–500L Cases*, 691 F.2d 15, 19–21 (1st Cir.1982); *Palmer v. United States*, 652 F.2d 893 (9th Cir.1981). The parties disagree, however, on the implications of this finding on the claims against the govern-ment, for which the court is the finder of fact. The government argues that the jury verdict should preclude this court from granting Nunez relief against the government on either his third party claim or on his original action against the government. Nunez argues that the court must fix the comparative liability of the two defendants, for otherwise the court's role in adjudicating the government's liability would be nullified.

### *Discussion*

#### A. *The Third Party Claims*

■ In support of its argument that this court should follow the findings of the jury, the government relies on collateral estoppel and res judicata principles. Since the jury has already decided the issue of the relative liability of the two defendants, it is argued the court cannot now make an independent finding on this issue that is inconsistent with the jury verdict.

Application of collateral estoppel principles to a case involving two fact-finders was recently discussed in *Solar Kinetics Corporation v. Joseph T. Ryersen & Son, Inc.*, 488 F.Supp. 1237 (D.Conn.1980). In that case, a jury awarded damages to plaintiff on its breach of contract claim, and the defendant's counterclaim for an alleged balance due on the purchase price was submitted for determination by the trial court. In defending the counterclaim, plaintiff argued in part that the specific findings of the jury as to defendant's breach of contract necessitated an additional finding that there had been a revocation of acceptance precluding recovery by defendant. This argument placed before the court the issue of whether the jury's special verdict was binding on the court's adjudication of the counterclaim. The court first acknowl-

---

1. As has already been indicated, 28 U.S.C. § 2402 provides that any action against the United States shall be tried by the court without a jury. The verdict of the jury was, at best advisory. The responsibility for decision remains with the court which has discretion whether to accept or reject the jury's verdict. Wright & Miller, Federal Practice and Procedure: Civil § 2335. In accordance with Rule 52(a), Fed.R.Civ.P., the court made findings of fact and stated its conclusion of law as concerns the action against the United States. Although not explicitly stated, implicit in the findings which are reflected at page 808 of the transcript and which, perhaps, should have been made explicit, was a finding that Carmen Palacio together with the other passengers in the Nunez vehicle were totally blameless—that is to say, they were not contributorily negligent to any degree.

edged that "where both of the triers of fact have been in attendance at a single trial—estoppel cannot be justified as a means of protecting the parties or the courts from needless litigation." 488 F.Supp. at 1243. Nevertheless, the court applied collateral estoppel principles based on the following reasoning:

[A]mong other things the doctrine of collateral estoppel rests firmly on the need to avoid conflicting adjudications.... If possible, the same parties should not be subject to conflicting determinations on the same point, both of which are binding.... [T]his court, in furtherance of its responsibility to preserve the integrity of the judicial process, has a substantial concern in the consistent determination of any particular question. Were we to remand only the legal claims, we would create a situation ripe with the possibility of inconsistent determinations of the same questions.

Id. at 1243 (quoting Heyman v. Kline, 456 F.2d 123, 131 (2d Cir.), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972)).

The court's reasoning in Solar Kinetics was derived essentially from the earlier Second Circuit opinions in Heyman v. Kline, supra, and Caputo v. U.S. Lines Co., 311 F.2d 413 (2d Cir.1963), cert. denied sub nom. Imparato Stevedoring Co., 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055 (1963). In Heyman, defendant appealed successfully from a court judgment finding him in violation of a breach of employment contract, and finding as well that he had no interest in a parcel of real estate related to the contract. The Court of Appeals held that defendant was improperly denied a jury trial on the breach of employment issue. The court further held that the equitable claim regarding the interest in the real estate should be remanded as well, even though plaintiff had agreed to waive any collateral estoppel effect that the court's decision would have on the jury trial of the contract claim. Because the equitable claim depended in part on the determination of the contract claim, and because of the above-quoted concern with avoiding inconsistent verdicts, the court determined that the "equitable counterclaims will have to await the jury's determination of whether [defendant] breached his contract." Id. at 131.

In Caputo, plaintiff was awarded damages in a personal injury suit against defendant vessel owner, and the parties agreed to submit the defendant's third party claim against a stevedoring company to the court. Implicit in the jury verdict was a finding that the stevedoring company was ultimately responsible for breach of its warranty since the claim before it was an alleged failure to store cargo properly and to furnish dunnage. The court determined, however, after taking additional expert testimony outside the presence of the jury, that the accident was caused by a latent defect that was not the fault of the stevedoring company.

On appeal, the Second Circuit held that the court was bound by the jury verdict, and thus could not absolve the stevedoring company of liability. In support of its holding, the court cited Rule 14(a) of the Federal Rules of Civil Procedure, which is designed to make the evidence used in the first party action available for the third party claim as well. Id. at 416. The court then reasoned that inconsistent verdicts based upon the same evidence are logically impossible. As a result, the trial court was directed to follow the verdict of the jury. Id.

Caputo, Heyman, and Solar Kinetics clearly have a bearing on actions brought under the Federal Torts Claims Act in which both the court and jury are fact-finders. In United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), in which third party actions against the United States were found permissible under the FTCA, the Supreme Court acknowledged that procedural difficulties might arise from the use of two fact-finders, but it looked for guidance from litigation in which issues of law are tried to a jury and issues of an equitable nature in the same case are tried by the court alone. Id. 340 U.S. at 556 & n. 12, 71 S.Ct. 407 & n. 12.

The leading case addressing the division of fact-finding responsibilities in cases with legal and equitable claims is *Beacon Theatres, Inc. v. Western,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The court there held that since the right to trial by jury is constitutionally guaranteed, all issues that overlay both legal and equitable claims should be decided in the first instance by the jury. The jury's determination will in turn bind the court under principles of res judicata and collateral estoppel. *Id.* at 504, 79 S.Ct. at 953. *See also Heyman v. Kline, supra,* 456 F.2d at 130 ("It is now fundamental ... that when legal and equitable claims are tried together, common questions of fact must be decided by the jury in order to preserve the integrity of the seventh amendment guarantee....")

■ Unlike cases in which legal and equitable claims are tried together, cases brought under the FTCA touch on additional concerns that must be considered together with the Seventh Amendment protections and the interest in avoiding inconsistent verdicts. The FTCA is a conditional waiver of the sovereign immunity of the United States, the condition being that suits against the United States may only be tried to a judge. Application of the holdings in *Caputo, Heyman,* and *Solar Kinetics* to FTCA cases could result in an extension of that waiver by requiring the court to hold the government liable when its own factual findings do not warrant it.

In the present case, there is no danger of overextending the government's waiver of sovereign immunity. It is not the government which is seeking the protection of the court as fact-finder but Mr. Nunez, who has already requested a jury trial. In the absence of FTCA concerns—or Seventh Amendment concerns, for that matter— considerable weight should be accorded the concern of avoiding inconsistent verdicts, which is fully implicated here. Were I to find the government liable on Nunez' cross-claim, the finding would clearly be inconsistent with the jury verdict. Although the jury verdict regarding the relative liability of the parties was not necessitated by the plaintiffs' action against Nunez, it would be controlling as to the government's third-party action against Nunez. The potential for inconsistent verdicts is thus unavoidable. In light of this, I am constrained to uphold the findings of the jury on the question of relative liability, insofar as it affects Nunez' third party complaint against the government. To hold otherwise would be to ignore the collateral estoppel interests recognized in this circuit without serving any countervailing constitutional or statutory interests.

**B.** *Nunez's First Party Claim Against the United States*

■ Although Nunez' damages claim against the government for his own personal injuries appears to implicate collateral estoppel concerns similar to those expressed in the previous section, the need for reaching a result consistent with that of the jury is far less compelling. A finding by the court in favor of Nunez is possibly inconsistent with the result the jury might have reached had the determination of his claims against the United States been put to the jury. The third party claims, by contrast, *did* put before the jury the issue of the relative liability to the plaintiffs of the government and Nunez. Nunez requested a jury determination of the government's third party claims against him and he is bound by that determination just as he is bound by the jury's determination in favor of the plaintiffs against him.

It could be argued that even as to the claims by Nunez against the government, the collateral estoppel principles enunciated in *Heyman* and *Caputo* should apply to preclude an independent factual finding by me. The Federal Tort Claims Act, however, provides that suits by a private party against the United States must be tried to the court without a jury. To preclude an independent factual finding by me in the original suit by Nunez against the government would be to leave the determination of that suit to the jury in contravention of that Act. Had this (the Nunez) claim against the government been severed from the first party claims against him, incon-

sistent verdicts would have been possible and the principles of collateral estoppel would not have been applicable. *See Wright v. United States,* 472 F.Supp. 1153, 1156 n. 9 (D.Mont.1979) (upholding jury verdict for third party defendant despite factual inconsistency with judge's verdict in first party action against the United States); Note, Joinder of the Government Under the Federal Tort Claims Act, 59 Yale L.J. 1515, 1520 (1960). Just as inconsistencies are tolerated in cases which are not joined, an inconsistency should be permissible here rather than eliminate altogether the statutorily mandated role of the court as fact-finder in FTCA cases.

Accordingly, I find that the negligence of the United States was a proximate cause of the personal injuries suffered by Nunez. Furthermore, I find that as between them, 90% of the responsibility for the accident lies with Nunez and 10% with the United States.[2]

In sum then, the verdict of the jury holding Nunez liable to the plaintiffs is dispositive of their claims against him. That verdict is also dispositive, as indicated above, of the third party claim by Nunez against the United States which is dismissed and of the third party claim of the United States against Nunez, which is granted. The disposition of the claim by Nunez against the United States is as indicated above and the parties are directed to communicate with the deputy clerk of this court to fix a date upon which a hearing on damages will be held.

SO ORDERED.

---

**2.** To the extent that findings of fact and conclusions of law as regards the degree of negligence of Nunez are required by Rule 52(a), Fed.R. Civ.P., they are as follows:

On June 4, 1979, at approximately 1:50 a.m. Nunez was operating an automobile which was traveling east on the Long Island Expressway, in the left lane of that three lane roadway. At a point on that road in the vicinity of the Greenpoint Avenue exit, Nunez directed his vehicle from the left lane to the right lane which he entered at a point beyond the Greenpoint Avenue exit. Nunez brought his vehicle to a stop and either prepared to or actually began to move in reverse to exit the expressway. I make this finding based upon the testimony, which I credit, of Pilar Lopez, who was a passenger in the Nunez car (Tr. 458–60); the testimony of George Dengel, formerly a member of the Accident Investigation Squad of the New York City Police Department for ten years who, in the course of that assignment investigated thousands of accidents (Tr. 250); the fact that the Nunez vehicle was found at the scene of the accident with the automatic transmission in re-

verse gear. Nunez' explanation for the presence of his vehicle in the right lane was not persuasive (Tr. 644), nor was his testimony of the events leading up to the accident, particularly as it concerns the mechanical failure of his automobile and the condition of the lights on the vehicle. (Cf. e.g., Tr. 671 with Tr. 682). He did acknowledge that he never engaged the emergency flashers (Tr. 682). Given my findings of fact, I conclude that Nunez failed to exercise the degree of care that a reasonable man would have exercised under the circumstances to avoid the creation of an unreasonable risk of harm to himself and that the failure to conform to the standard of care a reasonable man would have observed under the circumstances was a proximate cause of his injuries. Although I am mindful that it may not be wise or prudent to venture into the province of philosophers as regards causation, I am confident in asserting that but for the presence of the Nunez vehicle at that time and at that place, the particular accident would not have occurred and that his negligence was by far, the major contributing cause of his injuries.